SECURITY STORE & MANUFACTURING CO., RESPONDENT, v. AMERICAN RAILWAYS EXPRESS CO., APPELLANT.—51 S. W. (2d) 572.

Kansas City Court of Appeals. May 23, 1932.

176

*Joseph F. Keirnan* for respondent.

*Lathrop, Crane, Reynolds, Sawyer & Mersereau* and *Dean Wood* for appellant.

BLAND, J.—This is an action for damages for the failure of defendant to transport, from Kansas City to Atlantic City, New Jersey, within a reasonable time, a furnace equipped with a combination oil and gas burner. The cause was tried before the court without the aid of a jury, resulting in a judgment in favor of plaintiff in the sum of $801.50 and interest, or in a total sum of $1000. Defendant has appealed.

The facts show that plaintiff manufactured a furnace equipped with a special combination oil and gas burner it desired to exhibit at the American Gas Association Convention held in Atlantic City in October, 1926. The president of plaintiff testified that plaintiff engaged space for the exhibit for the reason "that the Henry L. Dougherty Company was very much interested in putting out a combination oil and gas burner; we had just developed one, after we got through, better than anything on the market and we thought this show would be the psychological time to get in contact with the Dougherty Company;" that "the thing wasn't sent there for sale but primarily to show;" that at the time the space was engaged it was too late to ship the furnace by freight so plaintiff decided to ship it by express, and, on September 18, 1926, wrote the office of the defendant in Kansas City, stating that it had engaged a booth for exhibition purposes at Atlantic City, New Jersey, from the American Gas Association, for the week beginning October 11th; that its exhibition consisted of an oil burning furnace, together with

two oil burners which weighed at least 1500 pounds; that, "In order to get this exhibit in place on time it should be in Atlantic City not later than October the 8th. What we want you to do is to tell us how much time you will require to assure the delivery of the exhibit on time."

Mr. Bangs, chief clerk in charge of the local office of the defendant, upon receipt of the letter, sent Mr. Johnson, a commercial representative of the defendant, to see plaintiff. Johnson called upon plaintiff taking its letter with him. Johnson made a notation on the bottom of the letter giving October 4th, as the day that defendant was required to have the exhibit in order for it to reach Atlantic City on October 8th.

On October 1st, plaintiff wrote the defendant at Kansas City, referring to its letter of September 18th, concerning the fact that the furnace must be in Atlantic City not later than October 8th, and stating what Johnson had told it, saying: "Now, Mr. Banks, we want to make doubly sure that this shipment is in Atlantic City not later than October 8th and the purpose of this letter is to tell you that you can *have your truck call for the shipment between 12 and 1 o'clock on Saturday, October 2nd for this."* (Italics plaintiff's.) On October 2nd, plaintiff called the office of the express company in Kansas City and told it that the shipment was ready. Defendant came for the shipment on the last mentioned day, received it and delivered the express receipt to plaintiff. The shipment contained twenty-one packages. Each package was marked with stickers backed with glue and covered with silica of soda, to prevent the stickers being torn off in shipping. Each package was given a number. They ran from one to twenty-one.

Plaintiff's president made arrangements to go to Atlantic City to attend the convention and install the exhibit, arriving there about October 11th. When he reached Atlantic City he found the shipment had been placed in the booth that had been assigned to plaintiff. The exhibit was set up, but it was found that one of the packages shipped was not there. This missing package contained the gas manifold, or that part of the oil and gas burner that controlled the flow of gas in the burner. This was the most important part of the exhibit and a like burner could not be obtained in Atlantic City.

Wires were sent and it was found that the stray package was at the "over and short bureau" of defendant in St. Louis. Defendant reported that the package would be forwarded to Atlantic City and would be there by Wednesday, the 13th. Plaintiff's president waited until Thursday, the day the convention closed, but the package had not arrived at the time, so he closed up the exhibit and left. About a week after he arrived in Kansas City, the package was returned by the defendant.

Banks testified that the reasonable time for a shipment of this kind to reach Atlantic City from Kansas City would be four days; that if the shipment was received on October 4th, it would reach Atlantic City by October 8th; that plaintiff did not ask defendant for any special rate; that the rate charged was the regular one; that plaintiff asked no special advantage in the shipment; that all defendant, under its agreement with plaintiff was required to do was to deliver the shipment at Atlantic City in the ordinary course of events; that the shipment was found in St. Louis about Monday afternoon or Tuesday morning; that it was delivered at Atlantic City at the Ritz Carlton Hotel, on the 16th of the month. There was evidence on plaintiff's part that the reasonable time for a shipment of this character to reach Atlantic City from Kansas City was not more than three or four days.

The petition upon which the case was tried alleges that plaintiff, on October 2, 1926, delivered the shipment to the defendant; that defendant agreed, in consideration of the express charges received from plaintiff, to carry the shipment from Kansas City to Atlantic City, and ''to deliver the same to plaintiff at Atlantic City, New Jersey, on or before October 8, 1926, *the same being the reasonable and proper time necessary to transport said shipment to Atlantic City,* in as good condition as when received of defendant (plaintiff) at Kansas City, Missouri; that previous to the delivery of said goods to defendant at Kansas City, Missouri, this plaintiff apprised defendant of the kind and nature of the goods and told defendant of the necessity of having the goods at Atlantic City by October 8, 1926, and the reason therefor; that defendant knew that the goods were intended for an exhibit at the place and that they would have to be at Atlantic City by that date to be of any service to the defendant (plaintiff).'' (Italics ours.)

''That this defendant through its servants and agents, after being apprised of the nature of the shipment of goods and all of the necessity of having the goods at Atlantic City at the time specified, to-wit: October 8, 1926, agreed with plaintiff and promised and assured plaintiff that if they would transport the goods through defendant, and deliver said goods to defendant at Kansas City by October 4th, that they would be at Atlantic City by said date, to-wit: October 8, 1926; that relying upon the promises and assurances of the defendant's agents and servants that the goods would be in Atlantic City by October 8, 1926, this plaintiff delivered said goods to the defendant on October 2, 1926, at Kansas City, Missouri, and paid defendant the express charges on same, as above set out, in packages or parcels, numbered from one to twenty-one inclusive.

''That relying upon defendant's promise and the promises of its agents and servants, that said parcels would be delivered at Atlantic City by October 8, 1926, if delivered to defendant by October 4,

1926, plaintiff herein hired space for an exhibit at the American Gas Association Convention at Atlantic City, and planned for an exhibit at said Convention and sent men in the employ of this plaintiff to Atlantic City to install, show and operate said exhibit, and that these men were in Atlantic City ready to set up this plaintiff's exhibit at the American Gas Association Convention on October 8, 1926.''

''That defendant, in violation of its agreement, failed and neglected to deliver one of the packages to its destination on October 8, 1926:

''That the package not delivered by defendant contained the essential part of plaintiff's exhibit which plaintiff was to make at said convention on October 8th, was later discovered in St. Louis, Missouri, by the defendant herein, and that plaintiff, for this reason, could not show his exhibit.''

Plaintiff asked damages, which the court in its judgment allowed as follows: $147 express charges (on the exhibit); $45.12 freight on the exhibit from Atlantic City to Kansas City; $101.39 railroad and pullman fares to and from Atlantic City, expended by plaintiff's president and a workman taken by him to Atlantic City; $48 hotel room for the two; $150 for the time of the president; $40 for wages of plaintiff's other employee and $270 for rental of the booth, making a total of $801.51.

Defendant contends that its instructions in the nature of demurrers to the evidence should have been given for the reason that the petition and plaintiff's evidence show that plaintiff has based its cause of action on defendant's breach of a promise to deliver the shipment at a specified time and that promise is non-enforceable and void under the Interstate Commerce Act; that the court erred in allowing plaintiff's expenses as damages; that the only damages, if any, that can be recovered in cases of this kind, are for loss of profits and that plaintiff's evidence is not sufficient to base any recovery on this ground.

No attack was made upon the petition at the trial and at this late day it must be adjudged to be sufficient if it states any cause of action whatever, however inartificially it may be drawn. Of course, the law applicable to the case is governed by the Statutes of the United States as construed by the Federal Courts. [Bilby v. A. T. S. F. Ry. Co., 199 S. W. 1004.] It is well established that a shipper cannot recover on a special contract to move a shipment within a specified time, for such would work an unjust discrimination among shippers. The only duty that the carrier is under is to carry the shipment safely and to deliver it at its destination within a reasonable time. [United States v. Am. Ry. Exp. Co., 265 U. S. 425; 44 Sup. Ct. Rep. 560; C. & A. R. R. Co. v. Kirby, 225 U. S. 155, 164; A. T. & S. F. Ry. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556; Fruit & Produce Co. v. Pa. Co., 201 Mo. App. 609.]

While the petition alleges that defendant agreed to deliver the shipment at Atlantic City on or before October 8, 1926, it also alleges that this was the reasonable and proper time necessary to transport said shipment to Atlantic City. Therefore, giving the petition a liberal construction, it would appear that all that plaintiff was contending therein was that defendant had agreed to transport the shipment within a reasonable time, and that delivery on or before October 8th was necessary to comply with the agreement. The petition refers several times to the agreement that if the goods were delivered to defendant by October 4th, they would be delivered at Atlantic City not later than October 8th, but it also alleges that the goods were not delivered to defendant until October 2nd. It is quite apparent from reading the petition, as a whole, that it was not upon a contract to deliver at Atlantic City on October 8th, goods delivered by plaintiff to defendant at Kansas City on October 4th. It would appear that the purpose of plaintiff, in pleading this agreement, was to allege sufficient facts to base its claim of special damages, that is that defendant was notified that it was necessary to have the shipment at Atlantic City by October 8th, and that the damages sustained accrued as a result of plaintiff's reliance on its being so delivered and that October 8th was plenty of time for defendant to have taken to transport the shipment. Much of the petition is surplusage but we cannot adjudge it wholly insufficient at this juncture.

There is nothing in the evidence tending to show any unjust discrimination between shippers in the agreement had between plaintiff and defendant. Boiled down to its last analysis, the agreement was nothing more than that the shipment would be transported within the ordinary time. Plaintiff sought no special advantage, was asking nothing that would be denied any other shipper, was asking no particular route, no particular train, nor for any expedited service. It was simply seeking the same rights any other shipper could have enjoyed on the same terms. No special instructions were given or involved in the case. [Foster v. Cleveland, et al. R. Co., 56 Fed. 434; Packing Co. v. Alaska S. S. Co., 22 Fed. (2d) 12.]

We think, under the circumstances in this case, that it was proper to allow plaintiff's expenses as its damages. Ordinarily the measure of damages where the carrier fails to deliver a shipment at destination within a reasonable time is the difference between the market value of the goods at the time of the delivery and the time when they should have been delivered. But where the carrier has notice of peculiar circumstances under which the shipment is made, which will result in an unusual loss by the shipper in case of delay in delivery, the carrier is responsible for the real damage sustained from such delay if the notice given is of such character, and goes to such extent, in informing the carrier of the shipper's situation, that the

carrier will be presumed to have contracted with reference thereto. [Central Trust Co. v. Savannah & W. R. Co., 69 Fed. 683, 685.]

In the case at bar defendant was advised of the necessity of prompt delivery of the shipment. Plaintiff explained to Johnson the "importance of getting the exhibit there on time." Defendant knew the purpose of the exhibit and ought to respond for its negligence in failing to get it there. As we view the record this negligence is practically conceded. The undisputed testimony shows that the shipment was sent to the over and short department of the defendant in St. Louis. As the packages were plainly numbered this, prima facie, shows mistake or negligence on the part of the defendant. No effort was made by it to show that it was not negligent in sending it there, or not negligence in not forwarding it within a reasonable time after it was found.

There is no evidence or claim in this case that plaintiff suffered any loss of profits by reason of the delay in the shipment. In fact defendant states in its brief:

"The plaintiff introduced not one whit of evidence showing or tending to show that he would have made any sales as a result of his exhibit but for the negligence of the defendant. On the contrary Blakesley testified that the main purpose of the exhibit was to try to interest the Henry L. Dougherty Company in plaintiff's combination oil and gas burner, yet that was all the evidence that there was as to the benefit plaintiff expected to get from the exhibit.

"As a matter of evidence, it is clear that the plaintiff would not have derived a great deal of benefit from the exhibit by any stretch of the imagination.

. . . . . . .

"Nowhere does plaintiff introduce evidence showing that the Henry L. Doherty Company in all probability would have become interested in the combination oil and gas burner and made a profitable contract with the plaintiff."

There is evidence that the exhibit was not sent to make a sale.

In support of its contention that plaintiff can sue only for loss of profit, if anything, in a case of this kind, defendant, among other cases cites that of Adams Exp. Co. v. Egbert, 36 Pa. 360. That case involved the shipment of a box containing architectural drawings or plans for a building, to a building committee of the Touro Aimshouse, in New Orleans. This committee had offered a premium of $500 to the successful competitor. These plans arrived after the various plans had been passed upon and the award made to another person. It was sought in that case to recover the value of the plans. The evidence, however, showed that the plans would not have won the prize had they arrived on time. The court held that the plans, under the circumstances, had no appreciable value and recovery could not be had for them and there was no basis for recovery for loss of the op-

portunity to compete for the prize. The opinion states that in denying recovery for the plans it is contrary to the English rule in such cases. Other cases cited by defendant involve loss of profits or the loss of opportunity to compete in such events as horse racing and the like. In one case, Table & Chair Co. v. R. R., 105 Miss. 861, it was held that the plaintiff could recover for loss of profits that might have been made in the sale of its commodity, as a result of exhibiting a sample at an exhibition, where the shipment was delayed too late for the exhibit. Some of the cases cited by defendant hold that such profits in those classes of cases are not recoverable, and others to the contrary.

Defendant contends that plaintiff ''is endeavoring to achieve a return of the *status quo* in a suit bases on a breach of contract. Instead of seeking to recover what he would have had, had the contract not been broken, plaintiff is trying to recover what he would have had, had there never been any contract of shipment;'' that the expenses sued for would have been incurred in any event. It is no doubt, the general rule that where there is a breach of contract the party suffering the loss can recover only that which he would have had, had the contract not been broken, and this is all the cases decided upon which defendant relies, including C. M. & St. P. Ry. v. McCaull-Dinsmore Co., 253 U. S. 97, 100, 40 Sup. Ct. Rep. 504, 504. But this is merely a general statement of the rule and is not inconsistent with the holdings that, in some instances, the injured party may recover expenses incurred in relying upon the contract, although such expenses would have been incurred had the contract not been breached. [See Morrow v. Railroad, 140 Mo. App. 200, 212, 213; Bryant v. Barton, 32 Neb. 613, 616; Woodbury v. Jones, 44 N. H. 206; Driggs v. Dwight, 31 Am. Dec. 283.]

In Sperry et al. v. O'Neill-Adams Co., 185 Fed. 231, the court held that the advantages resulting from the use of trading stamps as a means of increasing trade are so contingent that they cannot form a basis on which to rest a recovery for a breach of contract to supply them. In lieu of compensation based thereon the court directed a recovery in the sum expended in preparation for carrying on business in connection with the use of the stamps. The court said, l. c. 239:

''Plaintiff in its complaint had made a claim for lost profits, but, finding it impossible to marshal any evidence which would support a finding of exact figures, abandoned that claim. Any attempt to reach a precise sum would be mere blind guesswork. Nevertheless a contract, which both sides conceded would prove a valuable one, had been broken and the party who broke it was responsible for resultant damage. In order to carry out this contract, the plaintiff made expenditures which otherwise it would not have made. . . . The trial judge held, as we think rightly, that plaintiff was entitled at

least to recover these expenses to which it had been put in order to secure the benefits of a contract of which defendant's conduct deprived it."

In the case of Gilbert v. Kennedy, 22 Mich. 117, involved the question of the measure of plaintiff's damages, caused by the conduct of defendant in wrongfully feeding his cattle with plaintiff's in the latter's pasture, resulting in plaintiff's cattle suffering by the overfeeding of the pasture. The court said l. c. 135, 136:

"There being practically no market value for pasturage when there was none in the market, that element of certainty is wanting, even as to those cattle which were removed from the Pitcher farm to the home farm of the plaintiff for pasturage; and, as it could not apply to the others at all, and there being no other element of certainty by which the damages can be *accurately* measured, resort must be had to such principle or basis of calculation applicable to the circumstances of the case (if any be discoverable) as will be most likely to *approximate* certainty, and which may serve as a guide in making the most probable estimate of which the nature of the case will admit; and, though it may be less certain as a scale of measurement, yet if the principle be just in itself, and more likely to approximate the *actual damages*, it is better than any rule, however certain, which must certainly produce injustice, by excluding a large portion of the damages actually sustained."

In Hobbs v. Davis, 30 Ga. 423, a negro slave was hired to make a crop, but she was taken away by her owner in the middle of the year, the result of which the crop was entirely lost. The court said, l. c. 425:

"As it was, the true criterion of damages was perhaps, the hire of the negro, the rent of the land and all the expense incurred, and actual loss sustained by the misconduct of the defendant, rather than the conjecture of the witness, as to what the crop would have been worth.

"Compensation is a fundamental principle of damages whether the action is in contract or tort. [Wicker v. Hoppock, 6 Wall, 94, 99, 18 L. Ed. 752.] One who fails to perform his contract is justly bound to make good all damages that accrue naturally from the breach; and the other party is entitled to be put in as good a position pecuniarily as he would have been by performance of the contract."

The case at bar was to recover damages for loss of profits by reason of the failure of the defendant to transport the shipment within a reasonable time, so that it would arrive in Atlantic City for the exhibit. There were no profits contemplated. The furnace was to be shown and shipped back to Kansas City. There was no money loss, except the expenses, that was of such a nature as any court would allow as being sufficiently definite or lacking in pure speculation. Therefore, unless plaintiff is permitted to recover the expenses that

it went to, which were a total loss to it by reason of its inability to exhibit the furnace and equipment, it will be deprived of any substantial compensation for its loss. The law does not contemplate any such injustice. It ought to allow plaintiff, as damages, the loss in the way of expenses that it sustained, and which it would not have been put to if it had not been for its reliance upon the defendant to perform its contract. There is no contention that the exhibit would have been entirely valueless and whatever it might have accomplished defendant knew of the circumstances and ought to respond for whatever damages plaintiff suffered. In cases of this kind the method of estimating the damages should be adopted which is the most definite and certain and which best achieves the fundamental purpose of compensation. [17 C. J., p. 846; Miller v. Robertson, 266 U. S. 243, 257, 45 Sup. Ct. Rep. 73, 78.] Had the exhibit been shipped in order to realize a profit on sales and such profits could have been realized, or to be entered in competition for a prize, and plaintiff failed to show loss of profits with sufficient definiteness, or that he would have won the prize, defendant's cases might be in point. But as before stated, no such situation exists here.

While, it is true that plaintiff already had incurred some of these expenses, in that it had rented space at the exhibit before entering into the contract with defendant for the shipment of the exhibit and this part of plaintiff's damages, in a sense, arose out of a circumstance which transpired before the contract was even entered into, yet, plaintiff arranged for the exhibit knowing that it could call upon defendant to perform its common-law duty to accept and transport the shipment with reasonable dispatch. The whole damage, therefore, was suffered in contemplation of defendant performing its contract, which it failed to do, and would not have been sustained except for the reliance by plaintiff upon defendant to perform it. It can, therefore, be fairly said that the damages or loss suffered by plaintiff grew out of the breach of the contract, for had the shipment arrived on time, plaintiff would have had the benefit of the contract, which was contemplated by all parties, defendant being advised of the purpose of the shipment.

The judgment is affirmed. All concur.