No. 38,476

Rollie Harvey, Guardian of the Person and Estate of Mary J. Harvey, a Minor, *Appellant,* and *Cross-appellee* v. United Insurance Company, A Corporation, *Appellee* and *Cross-appellant,* and Rollie Harvey, Individually, *Appellee.*

(245 P. 2d 1185)

Opinion filed July 3, 1952.

*James N. Snyder,* of Leavenworth, argued the cause, and was on the briefs for Rollie Harvey, appellant and cross-appellee.

*Malcolm McNaughton,* of Leavenworth, argued the cause, and was on the briefs for United Insurance Company, appellee and cross-appellant.

*Lee Bond,* of Leavenworth, argued the cause, and was on the briefs for Rollie Harvey, Individually, Appellee (Intervenor).

The opinion of the court was delivered by

Smith, J.: This was an action to recover life insurance. The petition was in three causes of action. The defendant filed a general

demurrer to all three causes. An intervenor filed an answer and cross petition. The defendant demurred to these. The trial court overruled the demurrer to the first and second causes of action of the plaintiff and sustained it as to the third. As to the answer and cross petition of the intervenor, the court overruled the demurrer. The plaintiff and defendant have both appealed.

At the outset we shall point out that Rollie Harvey is plaintiff in the action as guardian of his daughter and is intervenor in his own right as an individual.

The second amended petition alleged that Rollie Harvey was the guardian of Mary J. Harvey, a minor child; that Oliver Eugene Harvey died intestate on June 23, 1949; that his sole heir was Rollie Harvey; that he brought the action in compliance with an order of the probate court; that the defendant, United Insurance Company, was an insurance corporation authorized to do business in Kansas; that one John Evans was a soliciting agent of defendant; that on or about April 6, 1949, Oliver Eugene Harvey executed and delivered to Evans his application for the issuance of life insurance in the amount of $1,000 and an additional $1,000 as double indemnity in event of the death of insured by accident; that thereafter the application was transmitted by the agent in due course of business to the Kansas City, Mo., office of the company (a copy of this application was attached to the petition); that the application by its terms called for the issuance of life insurance and double liability and in consideration of a monthly premium of $3.11, the first month's premium being paid to the agent on April 6, 1949; that the plaintiff had no knowledge of whether the life insurance policy was issued and formally delivered to Oliver Eugene Harvey, but that the application was never disapproved by defendant insurance company; that about June 23, 1949, Oliver died as the result of gunshot wounds and through no fault of Oliver, and his death was, therefore, accidental, and covered by the double indemnity feature; that after the death of Oliver proof of death was made and claim for the payment of $2,000 made, but the company denied liability under the application and refused to pay; that the application provided that Mary J. Harvey, a sister of Oliver, should be beneficiary; that the application contained a provision as follows:

"Except that if the applicant pays in cash to the company, on the date this application is signed, an amount equal to the full first premium on the policy applied for, and if this application is approved at the company's home office in Chicago, Illinois, for the plan of insurance, amount of insurance, and pre-

mium rate herein applied for, then the policy applied for shall be in force from the date of this application."

The petition further alleged that at the time of his death Oliver was in good health, would have passed any examination for life insurance, and had he lived the policy would have been issued to him, and the company held out by words and actions that it would issue and deliver the policy to him and if that were not so Oliver would have and could have secured a like amount of insurance elsewhere and since the company never legally disapproved the application, but up to the time of the death of Oliver retained it and the first month's premium during the period from April 6, 1949, to the date of the action being filed, and since defendant did all these things, defendant waived the approval of the application and actually in words and effect approved it and was estopped to deny the approval of it and is liable thereon as though the policy had been formally approved and delivered to Oliver.

In his second cause of action plaintiff made the allegations of the first a party and alleged further that if he was denied liability on contract in accordance with the allegations in the first cause of action, then he did not have an adequate remedy at law and should have specific performance of the insurance contract as applied for and defendant should be ordered to issue such a policy and thereafter be liable in the amount of $2,000.

For his third cause of action plaintiff made the allegations of the first a part and then alleged that the actions of the agent and the actions of the other officers and employees of defendant who had anything to do with the application as a result of which the actions of the company were unreasonable, careless and negligent, and as a result defendant was damaged in the amount of $2,000 and if he was denied recovery under the first and second causes of action plaintiff should recover damages against the company in the amount of $2,000.

The prayer of the petition was for $2,000 on the first cause of action and a reasonable fee for his attorney or on his second cause of action for specific performance of the contract, and judgment on it in the amount of $2,000 or in the alternative on the third cause of action then for damages in tort in the amount of $2,000. (A copy of the application duly filled out was attached to the petition.)

The defendant demurred to this petition on the ground it did not state a cause of action against it in favor of the plaintiff.

It will be noted Rollie Harvey was the father of Oliver Harvey and also of Mary J. Harvey, sister of Oliver, who was named as beneficiary in the application. He had been appointed guardian of Mary and brought this action at the order of the probate court. It will be noted further that while Rollie was an heir of Oliver, as his father, Mary was not an heir as his sister. At any rate, Rollie, as an individual and intervenor, first answered the petition by admitting all the allegations of the petition, but denied that plaintiff had a cause of action for recovery of the insurance moneys for the reasons set out in his cross petition. This cross petition admitted the allegations of plaintiff's petition but denied that plaintiff had a cause of action and that he had a right to the insurance funds as sole heir at law of Oliver. The intervenor then alleged that the action of the agent and of all the officers and employees of the company and as a result thereof the actions of the company were unreasonable, careless and negligent and as a result thereof Oliver and his estate and in turn the intervenor was damaged in the amount of $2,000.

As to the petition of the plaintiff, the trial court overruled the demurrer of the defendant to the first and second causes of action and sustained it as to the third. As to the demurrer of the defendants to the cross petition of the intervenor, the trial court overruled it.

Rollie Harvey, as guardian for Mary, appealed from the order of the trial court sustaining the demurrer to the third cause of action of plaintiff. The insurance company appealed from the order overruling its demurrer to the plaintiff's first and second causes of action and overruling its demurrer to the cross petition of the intervenor.

So as to clarify matters a little at the outset, it may be stated that the trial court sustained the company's demurrer to the third cause of action and overruled its demurrer to the intervenor's cause of action because any liability of the company in tort would accrue to the heir at law of Oliver and Mary was no such an heir while Rollie was.

The trial court overruled defendant's demurrers to the first and second causes of action and sustained it as to the third and overruled defendant's demurrer to the cross petition of the intervenor. The plaintiff appealed from the ruling as to his third cause of action. The defendant appealed from the order overruling its demurrer to plaintiff's first and second causes of action and from the order overruling its demurrer to the intervenor's cross petition.

Plaintiff's specification of errors is that the court erred in sustaining the demurrer of defendant to his third cause of action. The specification of errors of the defendant is that the trial court erred in overruling its demurrer to plaintiff's first and second causes of action and in overruling its demurrer to the intervenor's cross petition.

It is clear these several causes of action are the result of uncertainty on the part of counsel as to the correct theory upon which to rely for recovery. For instance, counsel representing the guardian for the beneficiary based his first cause of action on the policy even though no policy was issued; in his second cause he pleaded all the facts and asked that the defendant be ordered to issue a policy and then that he have judgment on it. He based his third cause on a tort he claimed was committed by defendant by not issuing any policy, thereby damaging the plaintiff.

As to the plaintiff's third cause of action, it is clear that plaintiff acting for the minor beneficiary would have no cause of action in tort. Any cause of action in tort, if there were any, would inure to the benefit of the heir of the deceased, not the beneficiary named in the application. The trial court ruled correctly in sustaining defendant's demurrer to this cause of action.

We go now to a consideration of the trial court's ruling on the defendant's demurrer to the plaintiff's first cause of action.

This cause was based on the theory that the defendant by its action in holding the application for two months without either approving or rejecting it held out to Rollie that it would eventually issue the policy and thereby actually did in effect approve it and was estopped to deny its approval. In that cause plaintiff stated that defendant is, therefore, liable on the application. Defendant meets this theory of plaintiff with the many authorities where it has been held that—

"An application for insurance, which is the preliminary statement made by a person applying for insurance, is not of itself a contract, but is simply a request proposition, or proposal for, or offer to accept, a contract or policy of insurance, and does not become a contract of insurance unless, and until, it is accepted by the company." (44 C. J. S. 969.)

See, also, *Pickett v. Insurance Co.*, 39 Kan. 697, 18 Pac. 903; *Lamb v. Mechanics Ins. Co.*, 122 Kan. 352, 252 Pac. 213; also *Moon v. Central States Fire Ins. Co.*, 138 Kan. 83, 23 P. 2d 444. We hold the trial court should not have overruled defendant's demurrer to plaintiff's first cause of action.

We go now to a consideration of the demurrer to plaintiff's second cause of action. In that case he made the allegations of the first one a part and in addition pleaded that in case he was denied recovery on his first cause he then did not have an adequate remedy at law, was entitled to equitable relief, and should have a specific performance of the insurance contract as applied for, and defendant should be ordered to issue and deliver such policy and thereafter be liable on it. By this cause plaintiff recognizes the force and effect of the authorities we have just discussed in considering the first cause. Here he seeks by equity to cause defendant to issue a policy so that he may sue on it. We are confronted with a much different question here than when considering the demurrer to the first cause. At the outset, we must examine here the provisions of the application. For the benefit of the company a paragraph of this application contained a statement as follows:

"(4) The Company shall incur no liability under this application until it has been received, approved, and a policy issued and delivered, and the full first premium specified in the policy has been actually paid to and accepted by the Company during the lifetime and continued insurability of the applicant, in which case such policy shall be deemed to have taken effect as of the date which the policy designates as the effective date of this policy, except that if the applicant pays in cash to the Company, on the date this application is signed, an amount equal to the full first premium on the policy applied for, and if this application is approved at the Company's home office in Chicago, Illinois, for the plan of insurance, amount of insurance and premium rate herein applied for, then the policy applied for shall be in force from the date of this application."

The plaintiff pleads compliance on his part with the provisions of the exception in this clause, that is, he pleads that the applicant paid in cash to the agent for the company the first full premium on the date the application was signed. He did not plead the approval of the policy at the company's home office in Chicago because he had no means of knowing that. All he knew about this was what he pleaded, that is, that the agent took the first premium and sent the application to Kansas City. He does not plead what sort of an office was maintained in Kansas City but in the absence of a motion to make more definite and certain the presumption is that such was a regular way of handling applications for this company. Plaintiff to meet the requirement in the application quoted above pleads that the company held this application somewhere from April 6, 1949, when it was signed, until June 23, 1949, when the applicant

died. This was more than two months. Our real question is whether under all the surrounding facts and circumstances of this case the plaintiff by alleging the provision in the application, to which attention has been called, by retention of the first full premium as long as it did by the company has alleged facts sufficient to constitute a cause of action for the issuance of a policy and judgment thereon. What was said by us in *Insurance Co. v. Stone*, 61 Kan. 48, 58 Pac. 986, is authority for joining an equity cause of action to enforce a contract to issue a policy with an action to recover on the contract. In that case we held:

"When the general agent of an accident insurance company receives an application for a policy of insurance, accompanied by the required cash premium, and transmits the application without the premium to the secretary of the company, whose duty is to receive both and to approve or reject the application, and such secretary does not disapprove it but holds it to await a remittance of the premium from the general agent, and fails to notify the applicant of his reason for so doing, and the only reason for not formally accepting the application and issuing the policy is the secretary's desire to delay until the general agent remits the premium, held, that the payment of the premium to the general agent is in law a payment to the company itself, and the retention of it and the application will be construed as an acceptance of the latter and the making thereby of the insurance contract."

The above case is also authority for the holding that the holding of an application by a general agent for an unreasonable length of time may be construed as an acceptance of the application. In that case the application for an accident insurance policy had been executed and sent to the home office, where it was held without being either accepted or rejected, on account of some differences between the general agent and the soliciting agent. Before the policy was issued the applicant was injured. We held:

"When an insurance company receives, and in fact accepts, an application for insurance, but does not do so in the usual and formal way, and receives and retains the cash premium accompanying the application, but delays the issuance of a policy to the applicant until an accounting can be had with its agent in respect to the premium paid, and in the meantime another agent of the company, whose duty would be to receive the policy if issued and deliver it to the insured, or to receive back from the company the premium paid upon the application in case it were to be rejected and to return it to the applicant, informs him that his application has been accepted and that a policy will presently be issued to him, and such applicant relies on such statements and, for that reason, fails to take out other like insurance, the company will be held estopped, because of the statements so made, to deny the making of the insurance contract."

To the same effect is *Williams v. Insurance Co.*, 102 Kan. 74, 169 Pac. 545; also *Cloyd v. Republic Mutual Fire Ins. Co.*, 137 Kan. 869, 22 P. 2d 431.

A recent opinion where we examined at length the matter of the effect of delay in acting on an application is *Waldner v. Metropolitan Life Ins. Co.*, 149 Kan. 287, 87 P. 2d 515. The basic facts in that case are much as those here. The policy had lapsed and the insured had made an application for reinstatement with which he had enclosed the premium. The company had accepted a check for this premium dated August 31, 1934, and retained it without acting on the application for reinstatement until about February 4, 1935. The company argued no agent was authorized to waive forfeitures, to alter or amend the policy, to accept premiums in arrears or to extend the due date of any premium. The plaintiffs contended defendant itself and not merely its agents must be held to have waived the requirements of proof of insurability satisfactory to it by retaining the premium money for an unreasonable length of time, both before the death of the insured and afterwards. With the issues of law thus proved we pointed out:

"They concede the home office finally, and on September 18, required its Kansas City agents to obtain a medical examination, but they insist, and the jury found, no such requirement was ever made known to them. They insist they cannot be penalized by reason of the neglect of the defendant's agents to follow instructions. They further contend the defendant could not retain the premium money on the application for reinstatement for a period of two months prior to the death of the insured without demanding proof of insurability from the insured, and over three months thereafter, and escape liability."

We pointed out that the company having received the premium, as defendant had in this case, had a reasonable time and no more than a reasonable time in which to act. We said:

"The defendant could not indefinitely hold the application for reinstatement without disapproving it, retain the money of the insured until long after her death, and thereafter escape liability on the ground the insured had not provided satisfactory proof of insurability."

We quoted from *Andrus v. Insurance Assn.*, 168 Mo. 151, 67 S. W. 582, where the court, in dealing with a similar situation, said:

"The company must take one horn of the dilemma or the other. It cannot retain the benefits and deny the existence of the contract. If it does not wish the receipt of the premium to have the effect in law of reinstating the policy or of preventing a forfeiture, it must refuse to receive the money until the health certificate is filed and until the president and medical director act."

The better weight of authority sustains the conclusion reached in *Waldner v. Metropolitan Life Ins. Co.*, supra.

The trial court ruled correctly in overruling defendant's demurrer to plaintiff's second cause of action.

We go now to a consideration of the trial court's ruling on defendant's demurrer to the intervenor's cross petition.

The intervenor was the heir of deceased. He was also the guardian of the beneficiary. It is quite clear he filed his intervening cross petition in tort because he wanted to be sure someone would have a cause of action against the company in case none of the three causes he had brought as guardian for the beneficiary were successful. There can be only one recovery and since we have held that plaintiff's second cause of action is good the question of whether the heir can bring an action in tort seems to be largely academic. We have examined it, however. Apparently it was brought pursuant to G. S. 1949, 40-258. That statute provides as follows:

"Where any person shall die and no personal representative is or has been appointed, a civil action for the recovery of death benefits based on any policy of insurance, wherein the beneficiary is not named or the beneficiary named is the estate of the decedent and where the fact amount of the insurance provided in the policy is one thousand dollars or less, may be brought by the widow, or, where there is no widow, by the next of kin of such deceased. The amount recovered in any such action shall inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased."

In this case there was a beneficiary named. The beneficiary was not the estate of the decedent. The intervenor had no cause of action against this estate. The trial court ruled incorrectly in overruling defendant's demurrer to this cause of action.

The judgment of the trial court in sustaining defendant's demurrer to plaintiff's third cause of action and overruling defendant's demurrer to plaintiff's second cause of action is affirmed; its judgment in overruling defendant's demurrer to plaintiff's first cause of action and to intervenor's cross petition is reversed.

THIELE, J., dissents from Syllabus 3 and corresponding part of opinion and agrees as to the result otherwise.

WERTZ, J., dissents from Syllabus 3 and corresponding part of opinion.