No. 45,045

Tom Schreppel and Rudy Schreppel d/b/a Tom and Rudy's Bargain Center, *Appellees*, v. Campbell Sixty-six Express, Inc., a Corporation, *Appellant.*

(441 P. 2d 881)

Opinion filed June 8, 1968.

W. C. *Dannevik, Jr.*, of Kansas City, Missouri, argued the cause, and *John B. Markham*, of Parsons, was with him on the brief for the appellant.

*John D. Sherwood*, of Oswego, argued the cause and *Rex Lawhorn*, of Parsons, was with him on the brief for the appellees.

The opinion of the court was delivered by

FONTRON, J.: This action was commenced against a truck line to recover damages occasioned by delay in transporting a shipment of freight. The plaintiffs, Tom and Rudy Schreppel, prevailed in the court below and the defendant, Campbell Sixty-six Express, Inc., has appealed.

Evidence introduced on behalf of the plaintiffs showed that the two Schreppel brothers, in addition to operating a business in Oswego, Kansas, engaged in custom combining during harvest time; that in July, 1965, Rudy was in charge of the combining operations; that approximately July 23, Rudy, who was then in Nebraska, phoned Tom at Oswego and told him either to ship or bring two combine pickup attachments to Gettysburg, South Dakota, where he planned to move, and to have them there not later than Friday, July 30; that Tom contacted both the driver of defendant's truck and the manager of the defendant's terminal at Parsons and was told by both men it would take three days to ship the attachments to Gettysburg; that Tom told both of them that if delivery could not be made within that time he would take the attachments to Gettysburg himself.

It is undisputed that the attachments were picked up in Oswego by the defendant's truck on Tuesday, July 27, and were delivered to Buckingham Freight, an interlining carrier, at Kansas City on July 29; that when received by Buckingham the shipment was mis-addressed to Gallysburg, South Dakota, (which is nonexistent) and it remained on Buckingham's docks until Monday afternoon, August 2, at which time Rudy located the shipment by phone from Gettysburg; that the combine attachments were then transported by Buckingham to Sioux City, Iowa, approximately 450 miles from Gettysburg, where they were picked up by Rudy's employees and taken to Gettysburg, reaching there Tuesday evening, August 3. By this time, however, it was too late, the plaintiff's regular customers having had to make other arrangements for harvest, and the plaintiffs lost the combining jobs they had been offered.

In their petition the plaintiffs alleged an oral agreement on the part of the defendant to deliver the combine pickup attachments at Gettysburg in three days; that the defendant negligently failed to deliver the attachments to their destination in three days as per the contract; and that due to defendant's negligence in not fulfilling

their contract, plaintiffs were damaged in the amount of $6,010.05.

For answer, the defendant company denied making any express contract to deliver the pickup attachments in three days and alleged that being a common carrier it does not guarantee any time of delivery but that plaintiff's property was transported and delivered with reasonable dispatch. The defendant also counterclaimed for the unpaid freight bill which plaintiffs declined to pay.

The case was tried to the court, which found generally in favor of the plaintiffs and against the defendant, finding specifically that defendant negligently misaddressed the shipment to Gallysburg, South Dakota, when it should have been addressed to Gettysburg, South Dakota, which negligence prevented delivery of the attachments within a reasonable time and that the plaintiffs were damaged by such negligence in the amount of $4,650. The present appeal followed.

On appeal, the defendant first argues that under the provisions of the Interstate Commerce Act, and regulations adopted pursuant thereto, it, as a common carrier, is prohibited from entering into a special contract for the delivery of freight at a specified time; and that any such an agreement would be void and unenforceable. Accordingly, the defendant maintains that the only obligation it had in transporting the plaintiffs' combine attachments was to deliver them with reasonable dispatch, as provided by the terms of the bill of lading which was executed in this case.

We are inclined to agree with the defendant in this contention. In *Store & Mfg. Co. v. Am. Rys. Exp. Co.*, 227 Mo. App. 175, 51 S. W. 2d 572, the applicable rule is commendably expressed:

". . . It is well established that a shipper cannot recover on a special contract to move a shipment within a specified time, for such would work an unjust discrimination among shippers. The only duty that the carrier is under is to carry the shipment safely and to deliver it at its destination within a reasonable time. [United States v. Am. Ry. Exp. Co., 265 U. S. 425, 44 Sup. Ct. Rep. 560; C. & A. R. R. Co. v. Kirby, 225 U. S. 155, 164; A. T. & S. F. Ry. v. Robinson, 233 U. S. 173, 34 Sup. Ct. 556; Fruit & Produce Co. v. Pa. Co., 201 Mo. App. 609.]" (p. 179.)

See, also, *Fallgren v. Railway Express*, 98 N. H. 333, 100 A. 2d 835; *Eliasberg Bros., Inc. v. Railway Exp. Agency, Inc.*, 302 I. C. C. 305, Nov. 18, 1957; *Tribby v. Chicago & N. W. Ry. Co.*, 62 S. D. 154, 252 N. W. 20.

But the trial court did not predicate its judgment on the violation of a contract to deliver the attachments to Gettysburg in three days,

but rather on negligence in misaddressing the same, thereby preventing delivery within a reasonable time. We view the court's finding in this regard as a finding that the defendant negligently breached its obligation, as set out in the bill of lading, to transport the property "with reasonable dispatch."

The defendant points to the plaintiffs' petition which alleges the execution of a contract to deliver the combine parts in three days and alleges a breach thereof, contending that under this pleading the trial court was without authority to render judgment based on a different theory, i. e., negligence in failing to deliver the attachments within a reasonable time.

We believe this contention cannot be sustained. The issue of negligence on the part of defendant was clearly raised in the plaintiffs' petition, and considerable evidence was introduced in that connection.

The defendant stoutly argues, however, that the cause of action set out in the petition relates solely to negligence in performing a special contract which was unenforceable. Strictly construed, the petition might, perhaps, be subject to such a limited interpretation. Even so, no benefit would accrue to the defendant from such a narrow construction.

K. S. A. 60-215 (b) provides in pertinent part:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. . . ."

Judge Spencer A. Gard, in his work, Kansas Code of Civil Procedure, Annotated, in discussing this provision says on page 82:

"The first sentence of this subsection (b) goes somewhat beyond the express language of the former statute but sanctions a practice well known to many Kansas trial judges. It is a rather common experience that after the pleadings are all filed and the issues joined the case will be actually tried on some theory relating to the claim or the defense entirely different from that presented in the pleadings. . . ."

The purpose of this provision, as well as companion provisions permitting variance between pleading and proof to be corrected by amendment within the sound discretion of the court, is to assure, within limits of fairness, that cases will be determined on their merits regardless of the ancient doctrine of variance. (Barron and Holtzoff, Federal Practice and Procedure, Rules Edition, Vol. 1A, § 449, p. 777.) This purpose, in turn, merges into the grand design of the Code of Civil Procedure to provide a simplified procedure

for the prompt determination of legal disputes according to matters of substance rather than matters of form.

From the record as a whole we think it evident that the issue of defendant's negligence in misaddressing the shipment, thereby preventing its delivery with reasonable dispatch, was not only before the court from the evidence which had been adduced, but that the defendant was fully aware of this. No objection was ever interposed to that part of the plaintiffs' evidence which clearly revealed the error committed in addressing the shipment. Indeed, the defendant's manager of the Parsons terminal, testifying as a witness called by plaintiffs, stated that "These items were to be shipped to Gallysburg, South Dakota, according to the way it was made out in our office in Parsons."

We deem it clear from the arguments presented on defendant's motion for an instructed verdict, made at the close of plaintiffs' evidence, that while plaintiffs were not wholly receding from their position that a special contract had been made, they also relied on the defendant's negligence in failing to deliver the combine parts with reasonable dispatch. The defendant understood that this was the plaintiffs' stance, for in his argument on the motion, defense counsel said:

"First, it seems to me that, undoubtedly, he is changing his position from that alleged in the complaint, because the complaint alleges a special contract, with time of the essence of that contract, and that they relied upon our employees and agents, and the time has been definitely defined as reasonable dispatch."

Apparently no formal motion was made to amend the plaintiffs' petition to conform to the proof. However, this is not specifically required where issues outside the pleadings are tried with the consent of the parties, express or implied. Where consent is present, pleadings are presumed to have been amended to conform to the proof.

In *Kaye v. Smitherman*, 225 F. 2d 583, a contention was advanced on appeal that certain evidence had been received which was outside the issues. By way of answer, the court on page 593 said:

". . . No objection was made to that evidence on the ground that it was outside the issues in the case. Accordingly, the pleadings should be regarded as amended to conform to the proof. . . ."

A somewhat similar situation was presented in *Vogrin v. Hedstrom*, 220 F. 863, where the federal court observed:

"... Where an issue has in fact been tried even though not made an issue under the pleadings, yet in support of the judgment entered, the pleadings will be presumed to have been amended to conform to the proof. . . ." (p. 866.)

See, also, *Gallon v. Lloyd-Thomas Company,* 264 F. 2d 821, 823.

It is quite true that no express consent on the defendant's part is disclosed by the record. However, we believe that consent may be implied from the fact that the defendant, knowing that plaintiffs were in part relying, as a basis for recovery, on negligence in misaddressing the shipment and failing to deliver it with reasonable dispatch, nevertheless requested no continuance, but proceeded, without objection, to introduce evidence on its own behalf.

Obviously the trial court considered that the issue of defendant's negligence in performing its contract to deliver with reasonable dispatch, was litigated at the trial with the defendant's knowledge, and without objection on its part. In so concluding, and in proceeding on the principle that the petition was to be presumed as amended to conform to the proof, the trial court committed no error. The defendant can not be said to have been disadvantaged by way of surprise in view of its failure to ask for additional time to prepare its defense.

The defendant next argues there is no evidence showing what a reasonable time would be for transporting freight from Oswego to Gettysburg. In this we think the defendant is mistaken. There is abundant evidence that the defendant's employees said it would take three days to deliver the shipment. As suggested by plaintiffs' counsel, those employees should know how long it would take; their business was transportation and their statements would have probative value.

Of perhaps even greater weight on the question of reasonable dispatch, is the uncontroverted fact that the misaddressed shipment lay on Buckingham's docks in Kansas City from July 29, to the afternoon of August 2—a period of more than three and one-half days. It requires no brilliance to figure out that those days were wasted, time-wise, and that delivery of plaintiffs' property could have been effected at least three and one-half days sooner than it was. We observe also that after the shipment was located on Monday afternoon, it was transported to Sioux City later that day and reached Gettysburg the next evening. Adding this day and one-half to the two days from Oswego to Kansas City, it would

appear evident that the shipment could have been transported to Gettysburg in three and one-half days, had it not been misdirected. This, according to the evidence, would have been in time for harvest.

At the tail end of its brief the defendant has included a short argument that the judgment exceeds, in amount, the damages shown of record. This issue was not one of those included in the defendant's statement of points. Rule 6 (*d*) provides in pertinent part:

". . . no issue, other than an issue going to the jurisdiction of the court over the subject matter of the litigation, may be briefed or will be considered on the appeal unless included in the statement of points. . . ."

The reasons for this rule are two-fold: first, it enables the opposing party to judge the sufficiency of the record which has been designated on appeal and second, it informs the members of this court of the specific issues to be considered on appeal. The rule thus serves a legitimate and important purpose. The defendant's failure to comply with the salutary provisions of the rule precludes us from considering whether the judgment, as to amount, is supported by evidence contained in the record.

We find no error in the judgment of the court below and the same is therefore affirmed.