No. 46,389

Donald Eugene Tripp, *Appellee,* v. The Reliable Life Insurance Company, *Appellant.*

(499 P. 2d 1155)

Opinion filed July 19, 1972.

*Robert W. McKinley, Jr.,* of Swanson, Midgely, Jones, Eager & Gangwere, of Kansas City, Missouri, argued the cause, and *John C. Thurlo,* of the same firm, and *Donald W. Vasos,* of Scott, Daily & Vasos, of Kansas City, were with him on the brief for the appellant.

*Frank D. Menghini,* of Dear, Yarnevich & Carey, of Kansas City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This action involves a family plan life insurance policy. Plaintiff prevailed in the trial court and defendant appeals. A determination of the issues on appeal depends on the effect of defendant's delay in acting on plaintiff's application for the policy.

Mr. Euwer, a collecting and soliciting agent for the defendant, and Mr. Graham, district manager for the defendant, met plaintiff

at his mother-in-law's home and while there Graham filled out an application for insurance. After the application was completed by Graham, Euwer made the statement that he was glad to have him (the plaintiff) with the company. The application was for a family plan type of insurance covering plaintiff, plaintiff's wife, and their four minor children. Plaintiff read the application but was primarily interested in answers he had given Graham to see that they were correct. Plaintiff, at the time the application was made, did not have the money to pay the insurance premium, which was necessary before the application would be sent to the home office. Neither Euwer nor Graham discussed their authority or lack of authority with plaintiff at any time. On February 7, 1969, Euwer came to plaintiff's home to collect the premium payment. Plaintiff paid the initial premium of $15.36 and received a receipt. At this time, Euwer stated to the plaintiff that upon the payment of the premium he was insured. The insurance application, along with the premium, was kept by the defendant company for approximately four months. The company did not contact the plaintiff during this period of time even though he had never changed his address and his mother-in-law had been in contact with defendant's agent, Euwer, on several occasions. On June 1, 1969, the plaintiff, upon arriving home from the funeral of his minor daughter, was met by Euwer who tendered him $15.36 and requested a return of the receipt. Plaintiff declined to accept the refund.

The application, as far as pertinent to this appeal, reads as follows:

". . . (2) The Company shall have sixty (60) days from the date of receipt of the application at its Home Office in Webster Groves, Missouri (which is agreed to be a reasonable period) to determine the insurability of Proposed Insured on the basis on which application is made or on another basis. If the policy is not received by the undersigned(s) within that period the application will be deemed to have been declined by the Company. . . ."

The receipt given plaintiff for the initial premium stated in part:

". . . The insurance under the policy for which application is made shall be effective on date of this receipt or the date of completion of the medical examination (if, and when required by the Company), whichever is the later date, if in the opinion of the authorized Officers of the Company at its Home Office in Webster Groves, Missouri, the Proposed Insured is insurable and acceptable for insurance under the rules and practices on the plan of insurance. . . .

"Company shall have 60 days from date of application to consider and act upon the application. Failure of the Company to offer a policy within such 60 days shall be deemed a declination."

The trial court, acting without a jury, concluded that the defendant was estopped to deny insurance coverage and entered judgment for plaintiff for $1,000 and costs, including an allowance of $300 for attorney fees.

Defendant first argues the trial court erred in finding defendant was estopped for the reason that estoppel was not an issue under the pleadings. It is true that plaintiff did not allege facts which would form a basis for the trial court's finding; however, the record discloses that both parties introduced evidence, without objection, on the circumstances surrounding the application, issuance of receipt, and payment of premium.

K. S. A. 1971 Supp. 60-215 (*b*) reads as follows:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made at any time, even after judgment; but failure so to amend does not effect [affect] the result of the trial of these issues. . . ."

In the absence of a pretrial order defining and limiting the issues, and in the absence of objection by a party, this statute permits variance between pleading and proof in order to further the purposes "of the Code of Civil Procedure to provide a simplified procedure for the prompt determination of legal disputes according to matters of substance rather than matters of form." (*Schreppel v. Campbell Sixty-six Express, Inc.*, 201 Kan. 448, 441 P. 2d 881, pp. 451, 452.) We can find no merit in defendant's argument in view of the obvious purpose of the statute and its construction in *Schreppel*.

Defendant cites *Agee v. Kansas Highway Commission*, 198 Kan. 173, 422 P. 2d 949, in support of its position. Although Syllabus ¶ 4 of that case appears in accord with defendant's contention, a careful reading of the opinion discloses the existence or nonexistence of fault or liability was not an issue and could not be considered in determining whether the owner of a motor vehicle was required to comply with the security provisions of the Motor Vehicle Safety Responsibility Act. Clearly, the issue was not entirely a pleading question.

Defendant further contends the court erred in finding defendant was estopped to deny insurance coverage and erred in finding there was no competent evidence to support such a conclusion.

The trial court found in favor of the plaintiff and stated in the

journal entry of judgment that defendant was estopped to deny coverage. We are not concerned with whether or not the trial court in finding in favor of plaintiff based its decision on the correct reason. We are concerned with whether or not the trial court's decision was correct for any legal reason. (*Pierce v. Board of County Commissioners*, 200 Kan. 74, 434 P. 2d 858.)

On February 7, 1969, the initial premium for the family policy was paid and a receipt issued. The application for the policy was in the hands of the insurance company at that time. The insured heard nothing from the company until June 1, 1969, on his return from his daughter's funeral, when the company tendered to the insured the initial premium and requested the return of the receipt. These facts raise the question as to the effect of an insurance company accepting an application and the initial premium for a family life insurance policy; then failing to communicate with the applicant for three months and twenty-one days, at a time following the death of one of the insured's children.

In *Waldner v. Metropolitan Life Ins. Co.*, 149 Kan. 287, 87 P. 2d 515, a policy of life insurance had lapsed and an application for reinstatement, accompanied by check for the premium, was made. The company retained the check, but failed to act on the application until after the insured's death two months after the date of the application. Judgment was entered for the plaintiff and on appeal we stated:

"Of course, the defendant, having received the application for reinstatement and the premium money, had a reasonable time within which to act. (Annotation, 105 A. L. R. 484.) Ordinarily the question of what constitutes a reasonable time is a question of fact for the jury under the circumstances of each particular case, although occasionally a particular case may present facts from which the court may find as a matter of law that the delay was reasonable or unreasonable. (Annotation, 105 A. L. R. 486-489.) In the instant case the trial court was not in a position to pass upon that question as a matter of law, as the jury was required to pass upon the question of whether a demand had in fact been made for a medical examination. The jury reconciled that disputed issue in favor of the plaintiffs. The defendant could not indefinitely hold the application for reinstatement without disapproving it, retain the money of the insured until long after her death, and thereafter escape liability on the ground the insured had not provided satisfactory proof of insurability. . . ." (p. 292.)

In *Harvey v. United Ins. Co.*, 173 Kan. 227, 245 P. 2d 1185, plaintiff's father (insured) on April 6, 1949, made application for insurance on his life and paid to defendant the first month's premium.

The insurance company held the application and took no action until after the insured died on June 23, 1949. We held that under these facts a cause of action was stated, and cited *Waldner* in support of our conclusion, pointing out that the company "had a reasonable time and no more than a reasonable time in which to act."

Defendant refers to the language of the application which provides that if the policy is not received by the applicant within sixty days the application will be deemed to have been declined by the company. Defendant also refers to the language of the receipt which provides if the company does not offer a policy within sixty days the application shall be considered declined. Based on these provisions defendant contends plaintiff was bound to know his application had been rejected after sixty days had passed, and any further delay in issuing the policy could not have misled him. Defendant also argues that, notwithstanding the failure to return the initial premium, no contract of insurance ever came into being when like provisions were in the application and the receipt, citing *Maldonado v. First National Life Insurance Co.,* 79 N. M. 354, 443 P. 2d 744.

The provision concerning automatic declination after sixty days was not present in *Waldner* and *Harvey.* We have, however, considered this provision in *Service v. Pyramid Life Ins. Co.,* 201 Kan. 196, 440 P. 2d 944. In this case we held the insurance company liable to the applicant on the theory that the payment of the initial premium and the issuance of a receipt constituted a contract of temporary insurance. We said:

"Many cases in the courts indicate a trend to construe the conditions liberally, and to treat receipts similar in wording to the one before us as binding during the interim regardless of the ultimate action of the insurance carrier on the application. These decisions are based upon the assurance that if the receipt meant anything, no other result could have been intended by the parties, for unless the insured was to be protected against death during the interim period there would be no advantage to him in paying his premium in advance. If the company did not intend that there should be insurance effective pending the date of the application, or medical, as in this case, and the date of the approval of the risk and the issuance of the policy, then the company would be charging and obtaining the full amount of the premium for one year, while the period of actual insurance would be as many days less than one year as there were days intervening between the date of the application and the approval. In other words, the insured would be paying for something which he did not receive. . . ." (p. 214.)

The defendant distinguishes *Service* from the facts in the instant case for the reason that in *Service* a regional manager of the de-

fendant company had the same power as a general agent and that his statement to the applicant, that the applicant was covered on receipt of the initial premium, was binding on the company. We do not have a general agent in this case. However, the import of the reasoning in *Service*, as far as temporary insurance was concerned, was not based on the status of the agent who made the statement binding the coverage.

We recognize that the death of the applicant in the *Service* case occurred during the sixty-day period. The insured's child in the instant case died forty-five days after the sixty days had passed. The reasoning in *Service*, supporting the theory of temporary insurance, is consistent with an extension of the doctrine of temporary insurance until the company acts upon the application.

This is also in accord with the rule of law established in *Waldner* and *Harvey*, that the company, having received the premium, had a reasonable time and no more than a reasonable time in which to act. It should be pointed out that in the application made by the plaintiff for insurance it was provided that the company would have sixty days from the date of the receipt of the application to determine the insurability of the applicant, and the application further provided that sixty days was deemed to be a reasonable period. In view of this it would logically follow that the insurance company should have returned the premium at the end of the sixty-day period since they had agreed in writing that this was the extent of the time they needed to determine the insurability of the applicant. Any delay in returning the premium thereafter falls directly under the rule established in *Waldner* and *Harvey*.

The only reason for failure to return the premium at the end of the sixty days would be that the company was still contemplating issuing the policy. We cannot support a rule which would permit an insurance company to make a decision on an application after the insured's death. We conclude under the facts disclosed in this record that when an application for life insurance is made and the company receives the initial premium and issues a receipt therefor, a policy of temporary insurance is created and said policy of temporary insurance continues in effect until the insurance company declines the application, notifies the insured, and returns the premium, notwithstanding the provisions of the application and the receipt to the contrary.

The defendant argues that attorney fees should not be allowed

in this case for the reason that the defendant had in good faith a reasonable basis for refusing to pay the plaintiff's claim. We have stated in many instances that the allowance of attorney fees depends upon the facts and circumstances of each particular case and only when the insurer refuses without just cause or excuse to pay in accordance with the terms of the policy can an allowance be made to the insured for reasonable attorney fees. (*Parker v. Continental Casualty Co.*, 191 Kan. 674, 383 P. 2d 937.)

In view of the necessity of construing the language of the application and the receipt for the first time as applied to the facts disclosed by this record we feel the defendant had just cause and excuse to refuse payment; therefore, no attorney fees should be allowed. Costs are assessed against the defendant.

The judgment is affirmed in part and reversed in part.

FONTRON, J., dissenting and concurring in part: It is important to understand that this is not a case of an insurer sitting on its hands after it has received an application and then attempting to evade coverage upon learning that the applicant has died. Some dates are important on this point.

The insurance application is dated February 8, 1969, although it was filled out perhaps a week earlier. The premium receipt bears date of February 7. The receipt contains the provision that the company shall have sixty days to consider and act upon the application and if the company fails to offer a policy within that time, such shall be deemed a declination. The application itself provides that if the applicant receives no policy within said 60-day period the application will be deemed to have been declined.

The application disclosed that Mr. Tripp had been treated by a Pittsburg physician for a stomach disorder and it was stipulated and agreed by the parties that the company made attempts to contact the doctor, but received no response. Mr. Euwer, the soliciting agent, testified that he had notified Mrs. Tripp to such effect.

On May 23, 1969, the company wrote the manager of its Kansas City office the following letter:

"To:    C. M. Graham, Manager    State & District 1-70    Date 5-23-69
"From:  O. E. Mueller,    Subject    TRIPP, DONALD E.
        Assistant Secretary    1039 Barnett
                               Kansas City, Kansas
                               Agent Euwer # 37

"Dear Mr. Graham:

"After writing to Dr. Veach on two different occasions and to you on three different occasions to try to get medical information which I need on this

applicant, I have decided that it is impossible to get it. Therefore, I have retired this file.

"Immediately refund the advance premium deposit of $15.36 and pick up receipt no. 3508 and return it to me.

Very truly yours,
/s/ Otto E. Mueller
Otto E. Mueller
Assistant Secretary"

This letter was received in Kansas City on May 26, 1969. The following day Mr. Euwer attempted to contact plaintiff at his home but there was no one home. On June 1, Mr. Euwer again went to the plaintiff's home to tender the premium and discovered at this time that plaintiff's daughter had died May 29, 1969.

As I understand the court's opinion, it is bottomed primarily on our decision in *Service v. Pyramid Life Ins. Co.*, 201 Kan. 196, 440 P. 2d 944, and not on estoppel. I would agree that the elements of estoppel, as they have been delineated by this court (see *Place v. Place*, 207 Kan. 734, 486 P. 2d 1354), are not established by this record.

The *Service* case is clearly distinguishable from the case at bar on its facts. In the first place the company's regional manager in that case had assured the applicant that he was covered by insurance when he paid the advance premium. This court held that the regional manager had implied authority to bind his company in this regard and that a temporary contract of insurance was thereby effected, as the applicant and the manager had both intended. Such is not the situation here. There is no evidence that a general or managing agent made any such representation to Mr. Tripp. It is true that Tripp testified that when he paid the premium to Mr. Euwer, the latter said that Tripp was covered. However, Euwer was a soliciting agent only, and it is not contended otherwise. The application itself clearly states that only the company officers named therein may modify contracts or waive any company rights or requirements, and then only in writing, and that no statements by other persons are binding on the company. This court has held many times that where such a provision is written into an application an agent cannot orally modify the terms or conditions under which the policy shall become effective. (*Smither v. United Benefit Life Ins. Co.*, 164 Kan. 447, 454, 190 P. 2d 183; *Service v. Pyramid Life Ins. Co.*, supra, p. 205.)

An additional distinction is pertinent. The application in *Service*

was executed June 30, and a yearly premium was then advanced. The premium receipt was much the same as in the present case and provided in part that if the application was not approved and accepted by the company within 60 days that the insurance applied for should not become effective. Mr. Service was killed in a motor accident July 21, well within the 60-day period. As of the date of death the company had neither notified the applicant that it would accept his application, or that it would not accept it (although the trial court found the company had decided to approve the application on June 15). On July 22, and apparently after having been notified by telephone of the death, the company mailed a supplemental application to Mr. Service for the same amount of insurance but at a higher rate. Under these circumstances this court held that the temporary insurance which went into effect when the application and the premium payment were delivered to the general agent, on the latter's assurance that Service was then covered, was still in force and effect when Mr. Service died, and the company was therefore held liable.

In *Service*, the court said that the temporary insurance remained in effect until the company either issued a policy or otherwise notified the insured during his lifetime. The insurance company did neither in the *Service* case; the attempted notification came too late after the applicant's death. Our opinion was entirely right and just under the circumstances existing in that case.

Here, however, the situation is quite different. Both the receipt and the application gave notice that if no policy was issued within 60 days the insurance application had been declined. That period had expired before the daughter's death and its expiration without issuance of a policy was tantamount to notice of the company's rejection. No other notice was required. Of course the applicant would be entitled to refund of the premium payment but tender of payment had been attempted prior to the daughter's death and tender was actually made on June 1.

I am in accord with the rule that where ambiguity is found in an insurance policy it is to be construed strictly against the insurer. The rule represents a fair and equitable principle and should be applied in the construction of insurance documents prepared by the insurer. However, the rule of strict construction does not relieve a tentative insurance purchaser of the obligation to read the papers which govern the transaction, nor was the rule intended to rewrite

insurance contracts when they are fairly expressed and untainted by fraud.

The court's opinion ignores the final paragraph of the receipt—which is not written in small lettering—stating that the company shall have 60 days in which to act on the application and if a policy is not offered within that time the company is deemed to have declined it. It ignores also the similar provision in the application. To require the company to give a written notice of rejection after the 60-day period has expired goes far beyond our decision in *Service* and is, I believe, a wholly gratuitous requirement.

I concur with that portion of the opinion disallowing an attorney's fee, but otherwise I am obliged to dissent.

FROMME, J., joins in the foregoing dissenting and concurring opinion.