No. 31,318

ALBERT MOSS, *Appellee*, v. THE SPOT CASH INSURANCE COMPANY, *Appellant.*

(27 P. 2d 204.)

Opinion filed December 9, 1933.

`C. A. Leinbach,` of Onaga, and *William Bradshaw,* of Topeka, for the appellant.

*Lester M. Goodell, Randal C. Harvey* and *Paul L. Harvey,* all of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover on an insurance policy issued on the life of Albert R. Moss, familiarly known as Raymond Moss, and a son of the plaintiff, Albert Moss. Plaintiff recovered, and defendant appeals. The important questions in the case were, whether a provision of the policy relating to reinstatement after lapse had been waived, and whether the insured was in good health at the time of reinstatement.

Previous to September 22, 1931, the policy had lapsed for non-payment of monthly premiums. J. C. Towson was defendant's solicitor of insurance and collector of premiums, and had authority to solicit reinstatement of lapsed policies. Raymond lived with his father and his stepmother, Mrs. Moss, and had arranged with Towson to pay premiums at his home, rather than at the place where he was employed. In the forenoon of September 22 Towson called at the home for the purpose of procuring reinstatement of the policy. Raymond was not at home, and Towson had a transaction relating to the insurance with Mrs. Moss. Out of money left with her by

Raymond to pay premiums, she paid all arrearages, and paid premiums in advance to November 1. On the next day Towson delivered the money to the company. On the morning of September 23 Raymond was very sick with an acute disease which physicians testified may have come on very suddenly while he was asleep the night of September 22. He was taken to a hospital, where he died on September 29. The secretary of the company testified that on September 23 he went to the hospital for the purpose of procuring a health certificate, but a lady at a desk informed him he could not see Raymond. He did not talk to any of the doctors or nurses, and made no further effort. At the time of this visit to the hospital the secretary knew Towson had collected the money paid to him by Mrs. Moss. The morning after Raymond's death Towson requested Mrs. Moss to furnish proof of death, as they desired to make quick payment.

There was satisfactory evidence that Raymond was in good health on September 22, and attended a dance at Kansas City that night. The company did not return the money which had been received, or offer to return it, and did not indicate to Raymond's father or stepmother, before Raymond's death, that the policy had not been effectively reinstated. The secretary testified the intention was to keep the money and see if Raymond recovered sufficiently to sign a "revival of good health."

The policy contained the following provision:

"If this policy lapses because of nonpayment of premiums when due, this policy may be reinstated by the payment of all defaulted premiums with interest thereon at the rate of five per cent per annum from date of default, and upon payment of the current premium: *Provided,* The insured shall furnish the company, upon blanks furnished by it, satisfactory proof of good health."

On two previous occasions when the policy had lapsed for nonpayment of premium, Raymond had signed applications for reinstatement prepared and presented by the company. If in this instance the company desired proof of good health, it was necessary that it should furnish the blanks indicating what would be satisfactory. When Towson received the money to reinstate the policy, he had blanks in his pocket. He did not mention the fact to Mrs. Moss, did not leave a blank with her to be filled out later, did not suggest proof of good health would be required, and made no inquiry or statement about Raymond's health. He gave a receipt for the

money which stated it was understood the policyholder was in good health and free from injury up to 12 o'clock noon of September 22. He then told Mrs. Moss that it was paid up to November, and said, "He is all right now until November."

There was conflicting testimony relating to material matters, and the findings of the jury show important testimony for defendant was not believed. The jury were instructed by the trial judge, the late George H. Whitcomb, with his customary fairness, thoroughness and perspicacity, and the instructions are not open to the objections urged by the company. The jury returned the following findings of fact:

"1. Did the insured become ill during the night of September 22, 1931, and if so, state the hour as near as you can. A. Yes, late at night or early the next morning.

"2. Was the insured seriously ill at 8 o'clock a. m. the morning of September 23, 1931? A. Yes.

"3. If you answer question No. 2 in the affirmative, did that illness continue until the insured died? A. Yes.

"4. Was the insured in condition to transact business from the morning of September 23, 1931, until the time of his death? A. No.

"5. Did the secretary of the defendant company attempt to see the insured on September 23, 1931, for the purpose of obtaining a revival application or health certificate? A. No.

"6. Did the defendant offer to return the premiums paid to any one within a reasonable time under the circumstances? A. No.

"7. Was the insured in good health when the premiums were paid by his stepmother on September 22, 1931? A. Yes.

"8. Did the insured or his stepmother know he was not in good health at the time the premiums were paid September 22, 1931? A. No.

"9. Do you find the agent Towson was held out by the defendant company as having authority to do what he did in connection with the policy in question? A. Yes.

"10. Did the defendant waive the making of the proof of good health by the insured? A. Yes."

These findings were well sustained by evidence.

Whether Raymond Moss was in good health on September 22 was a question raised by the pleadings, and strenuously contested at the trial. At the trial the defendant offered in evidence the hospital record of the case, which was admitted without objection, except certain statements in the history of the case purporting to show the patient was in bad health on September 22 and previously. Those statements were properly excluded as hearsay. The company had not investigated the origin of the statements before trial, and

was not able to do so immediately after the statements were rejected. On motion for new trial an affidavit was presented to the effect Mrs. Moss had given the history which had been placed on the hospital record. This constituted a belated attempt to add to testimony offered by the company at the trial tending to impeach Mrs. Moss, and new trials are not granted to permit introduction of cumulative impeaching evidence which diligence might have discovered in advance of trial.

The judgment of the district court is affirmed.

HARVEY and HUTCHISON, JJ., not sitting.