No. 33,905

Isador Waldner and Frances Waldner, *Appellees*, v. Metropolitan Life Insurance Company, *Appellant*.

(87 P. 2d 515)

Opinion filed March 4, 1939.

*Edwin S. McAnany, Thomas M. Van Cleave, Willard L. Phillips, Bernard W. Alden, Patrick B. McAnany* and *Thomas M. Van Cleave, Jr.,* all of Kansas City, for the appellant.

*A. J. Herrod,* of Kansas City, for the appellees.

The opinion of the court was delivered by

Wedell, J.: This was an action by beneficiaries to recover on a life insurance policy. The plaintiffs prevailed, and the defendant has appealed.

The defendant first contends its demurrer to plaintiffs' evidence should have been sustained on the ground it did not establish a cause of action. The court was, of course, entitled to consider plaintiffs' evidence as true, together with all reasonable inferences which might properly be drawn therefrom. If there was any insufficiency of proof it was later cured by defendant's evidence. Under such curcumstances the ruling on the demurrer cannot be reversed. (*City of Garnett v. Dowis,* 144 Kan. 484, 61 P. 2d 913.)

The jury made findings of fact which were as follows:

"1. Did Frances Waldner, on August 28, 1934, sign her mother's name to the application for reinstatement, of that date, introduced in evidence herein? A. Yes.

"2. If you answer question No. 1, 'No,' state who wrote such signature. A. ———.

"3. On August 31, 1934, did Harold L. Rively receive from Isadore or Frances Waldner, plaintiffs herein, the check of that date introduced in evidence, and endorse the receipt of it upon the reinstatement application introduced herein as defendant's exhibit 2? A. No.

"4. Did Harold L. Rively, on August 31, 1934, execute a provisional receipt, form 068, torn from the application introduced in evidence in this cause, and deliver it to Isadore Waldner? A. No.

"5. Was the application for reinstatement introduced in evidence, dated August 28, 1934, signed, 'Frida Hirschl,' forwarded to the defendant's New York home office shortly after August 31, 1934? A. No.

"6. Did the Metropolitan Life Insurance Company of New York, through its New York home office, on September 13, 1934, notify the Wyandotte office that a medical examination of Frida Hirschl, at her expense, was required? A. Yes.

"7. Did the home office of said company, on October 4, 1934, and October 18, 1934, inquire about a medical examination of Frida Hirschl? A. Yes.

"8. Did Harry Lucas or Harold L. Rively notify either Mr. or Mrs. Waldner, plaintiffs herein, after September 13, 1934, and before October 30, 1934, that a medical examination would be required of Frida Hirschl, before the reinstatement application could be passed upon? A. No.

"9. Did Frida Hirschl ever submit to and have forwarded to said company, a medical examiner's report under said application prior to her death? A. No.

"10. Do you find the defendant accepted the check dated August 31, 1934, cashed it, and retained the proceeds thereof in its possession from about September 4, 1934, to about February 4, 1395, and without offering to return the proceeds of said check to the insured or her beneficiaries? A. Yes.

"11. Did the defendant accept the check dated August 31, 1934, unconditionally in payment of the premium which was due May 6, 1934, and retain the proceeds thereof from about September 4, 1934, until about February 4, 1935? A. Yes."

The defendant moved to have answers 3, 4, 5, 8, 10 and 11 set aside for the reason they were contrary to the evidence, contradic-

tory to each other, unsupported by the evidence, and were .inconsistent with the general verdict. In its contention in this court' defendant does not complain concerning findings 4 and 10, but restricts its objection to the other findings mentioned. A careful analysis of the record compels the conclusion the motion was properly overruled. As to the credibility of witnesses, the trial court gave its approval to the special verdict by overruling the motion to set aside portions thereof, and gave its approval to the general verdict by overruling the motion for a new trial. The pertinent findings were not necessarily inconsistent with each other or with the general verdict. Special findings must be harmonized whenever it is reasonably possible to harmonize them. The rule is to give them such a construction, if possible, as will bring them into harmony and thus uphold the general verdict. (*Jordan v. Austin Securities Co.*, 142 Kan. 631, 649, 51 P. 2d 38.) The reason for construing the special findings so as to harmonize them with the general verdict, if possible, is that every reasonable presumption must be indulged in favor of the general verdict. (*Parmenter v. Morrison*, 130 Kan. 707, 710, 288 Pac. 582; *Lesher v. Carbon Coal Co.*, 127 Kan. 34, 272 Pac. 155.) In the Lesher case it was held:

"In the consideration of the question of inconsistency between the answers to special questions and the general verdict nothing will be presumed in aid of the special findings and every reasonable presumption will be indulged in favor of the general verdict.

"Where special findings are fairly susceptible of more than one interpretation the one which harmonizes with the general verdict should be adopted rather than the one which points to inconsistency." (Syl. ¶¶ 1, 2.)

In support of defendant's motion for a new trial it raises the question of inconsistency of certain specific findings, and that contention will be treated presently. Defendant also moved for judgment on the special findings on the ground such findings entitled it, rather than the plaintiffs, to a judgment in its favor. We think that motion was also properly overruled.

The real question in this lawsuit is whether the defendant, having received and retained the premium money as it did, can escape liability on the policy. The policy had lapsed for nonpayment of a premium. Defendant contends, the policy having lapsed, it had the right, under the terms of the policy and application which constituted the contract, to require a medical examination of the insured, and that it was not required to reinstate the policy unless there was produced evidence of insurability satisfactory to it. It

further contends the policy could not be revived until the company itself had officially approved the application for reinstatement, and that it had not done so. It further urges, under the insurance contract no agent was authorized to waive forfeitures, to alter or amend the policy, to accept premiums in arrears or to extend the due date of any premium. On the other hand, the plaintiffs contend defendant itself, and not merely its agents, must be held to have waived the requirement of proof of insurability satisfactory to it by retaining the premium money for an unreasonable time both before the death of the insured and long thereafter. The special findings quite clearly present the pertinent facts as determined by the jury, but the statement of a few additional facts may be helpful. The premiums were due semiannually, in the sum of $34.98, on the 6th day of November and May of each year. The May, 1934, premium had not been paid. The statutory notice of intention to forfeit, in the event of failure to pay within the thirty-one day grace period, was given by the company. On August 28 application on behalf of the insured was made for reinstatement by Frances Waldner, one of the plaintiffs, who was the daughter of the insured. The mother lived with her daughter and her son-in-law, Isador Waldner, the other plaintiff. The insured was an aged woman. The premium was paid by check on August 31, 1934. It was endorsed by George Means, the district manager of the Kansas City area, on September 1, and was cashed September 4. The Kansas City office notified the home office at New York concerning the receipt of the premium, enclosed the application for reinstatement, and asked for instructions on procedure. That letter was dated September 1. The record discloses the home office did not receive that letter until September 10. On September 10 the home office wrote the Kansas City office. The last-mentioned letter was not made a part of the record, but the answer from the Kansas City office, under date of September 13, discloses that the home office, in its letter on September 10, must have demanded an explanation for the delay in the first letter from the Kansas City office. Not until September 18 did the home office write the Kansas City office demanding a medical examination. The jury found on conflicting evidence the premium check was accepted by the agent without any receipt, conditioned upon a submission of the insured to a medical examination, and it further found, on conflicting evidence, no demand for a medical examination was ever made known to the beneficiaries. Defendant does not

contend a written demand on the insured or beneficiaries for a medical examination was made by anyone. It is conceded defendant's agents dealt with the beneficiaries and not with the insured in the matter of the application for reinstatement, and that the check covering the premium payment was made by the daughter of the insured. The pertinent portion of the application provided:

"Application is hereby made for the reinstatement of the above stated policy which lapsed for nonpayment of premium due as stated above. I hereby certify that the foregoing statements and answers are correct and wholly true and have been made by me to induce the Metropolitan Life Insurance Company to reinstate the above policy, and I agree that if said company shall grant such reinstatement the same shall be deemed to be based exclusively upon the representations contained in this request and upon the express condition that if the foregoing statements be in any respect untrue said company shall, for a period of two years from the date of such reinstatement, be under no liability by reason of the attempted reinstatement of the policy, except that the company shall return to the insured or his personal representative all premiums paid since the date of said reinstatement.

"It is understood and agreed that any sum deposited with the company on account of this application for reinstatement will be held for my account without obligation on the part of the company until it has officially acted on this application, and that (a) if this application is approved, then any such sum will be applied to the payment of overdue premium and interest, but (b) if the company declines to reinstate said policy, the said sum will be returned."

The application, dated August 31, contained a recommendation of Harold L. Rively, the local soliciting and collecting agent, for reinstatement. The insured did not die until October 30, 1934. The cause of death was pneumonia. Defendant does not contend the application for reinstatement contained any misrepresentation. Harry Lucas, assistant manager for the Kansas City area, knew of the insured's death within a day or so after it occurred. The Kansas City office notified the home office of the death by letter, dated November 3. The defendant retained the premium money until February 4, 1935, when it tendered that money, together with the paid-up insurance and a dividend, to plaintiffs. The tenders were refused.

Plaintiffs do not rely upon the authority of the defendant's agents to extend the insurance or to waive the provisions of the policy regarding proof of insurability. They contend the defendant itself, under the facts in the instant case, must be held to have waived the requirement of proof of satisfactory insurability. They concede the home office finally, and on September 18, required its Kansas

City agents to obtain a medical examination, but they insist, and the jury found, no such requirement was ever made known to them. They insist they cannot be penalized by reason of the neglect of the defendant's agents to follow instructions. They further contend the defendant could not retain the premium money on the application for reinstatement for a period of two months prior to the death of the insured without demanding proof of insurability from the insured, and over three months thereafter, and escape liability.

Of course, the defendant, having received the application for reinstatement and the premium money, had a reasonable time within which to act. (Annotation, 105 A. L. R. 484.) Ordinarily the question of what constitutes reasonable time is a question of fact for the jury under the circumstances of each particular case, although occasionally a particular case may present facts from which the court may find as a matter of law that the delay was reasonable or unreasonable. (Annotation, 105 A. L. R. 486-489.) In the instant case the trial court was not in a position to pass upon that question as a matter of law, as the jury was required to pass upon the question of whether a demand had in fact been made for a medical examination. The jury reconciled that disputed issue in favor of the plaintiffs. The defendant could not indefinitely hold the application for reinstatement without disapproving it, retain the money of the insured until long after her death, and thereafter escape liability on the ground the insured had not provided satisfactory proof of insurability. In *Andrus v. Insurance Assn.,* 168 Mo. 151, 67 S. W. 582, it was said:

"The company must take one horn of the dilemma or the other. It cannot retain the benefits and deny the existence of the contract. If it does not wish the receipt of the premium to have the effect in law of reinstating the policy or of preventing a forfeiture, it must refuse to receive the money until the health certificate is filed and until the president and medical director act." (p. 166.)

While the decision in *Moss v. Spot Cash Ins. Co.,* 138 Kan. 568, 27 P. 2d 204, is not entirely controlling in the instant case, it is helpful on the principle of waiver. It was there said:

"The important questions in the case were, whether a provision of the policy relating to reinstatement after lapse had been waived, and whether the insured was in good health at the time of reinstatement. . . . There was satisfactory evidence that Raymond was in good health on September 22, and attended a dance at Kansas City that night. The company did not return the money which had been received, or offer to return it, and did not indicate to Raymond's father or stepmother, before Raymond's death, that the policy had

not been effectively reinstated. The secretary testified the intention was to keep the money and see if Raymond recovered sufficiently to sign a 'revival of good health.'

"The policy contained the following provision: 'If this policy lapses because of nonpayment of premiums when due, this policy may be reinstated by the payment of all defaulted premiums with interest thereon at the rate of five percent per annum from date of default, and upon payment of the current premium: *Provided,* The insured shall furnish the company, upon blanks furnished by it, satisfactory proof of good health.'

"On two previous occasions, when the policy had lapsed for nonpayment of premiums, Raymond had signed applications for reinstatement prepared and presented by the company. If in this instance the company desired proof of good health it was necessary that it should furnish the blanks indicating what would be satisfactory." (pp. 568, 569.)

In the instant case defendant does not contend any blanks were left for the insured to fill out and sign which touched the subject of her health, or that she was directed to consult any doctor for the purpose of having a medical examination.

We think the special and general verdicts clearly indicate the jury regarded defendant's delay as unreasonable and that such delay amounted to a waiver of proof of insurability and operated as an effective revival of the policy.

Defendant contends the question of whether the defendant waived the requirements of a medical examination and thus in effect revived the policy was not an issue under the pleadings. It insists the only issue was whether the company waived prompt payment of the premium so as to keep the original policy in force. We think such a construction of the pleadings is too narrow. We need, however, not rest the decision on that point alone. If there was any question as to the sufficiency of the pleadings on that particular point, we think the parties clearly broadened the issues in the course of the trial. In fact, it would appear the company defended mainly on the ground the policy had not been reinstated. Practically all of its evidence pertained to that feature of the case. It would seem all the testimony that could possibly have been offered on the question of waiver of proof of insurability is contained in the record. Nor does the defendant contend other testimony on the subject would or could have been offered had it thought such issue was joined by the pleadings. Moreover, the record discloses that feature of the case was quite thoroughly covered by the special findings. No objection appears to have been made to the submission of any of the special questions to the jury.

Defendant urges the jury was not instructed on the question of waiver of proof of insurability. We do not find any objection was made to the instructions as being erroneous or inadequate to cover the issues as tried. No objection is now made to the instructions as given. We do not find the point was presented to the trial court on motion for a new trial, nor is it argued here that it was presented on the hearing of that motion. Assuming defendant might properly have raised the point during the trial, we cannot now reverse the case on the ground the issue was not presented and tried.

The grounds upon which defendant asks this court to order a new trial are: "(a) Misconduct of the plaintiffs; (b) the verdict was given under the influence of passion and prejudice; (c) special findings numbered 6 and 7 were inconsistent with special finding numbered 11; (d) the verdict is contrary to the evidence."

A search of the record discloses points (a) and (b) were presented to the trial court and that court was satisfied the verdict should not be set aside on those grounds. The trial court was in a better position to pass upon those particular complaints than is this court, and the force of the matters urged here in support of the complaints is not regarded as sufficient to justify this court in substituting its judgment for that of the trial court.

We have previously passed on the motion to set aside certain special findings. Touching, however, specifically, ground (c) of the motion, we find it requested that finding number 11 be set aside in its entirety. In that form the motion was overruled, and in that ruling we think the trial court did not commit reversible error, if, in fact, it erred at all. Certainly all of finding number 11 was not inconsistent with findings 6 and 7. The only portion of that finding which is argued here pertains to the word "unconditionally," as pertaining to the defendant itself as distinct from its agents. Moreover, as we view the case, the word "unconditionally," as contained in finding number 11, might be eliminated entirely and the subject of waiver by the defendant itself, as distinguished from waiver by its agents, would still be embraced in finding number 10 and would be vitally affected by findings 8, 3, 4 and 5. The home office of the defendant did eventually write the Kansas City office and request a medical examination. That request, however, was never conveyed to the insured or to the beneficiaries by the defendant or its agents. The agents accepted the premium unconditionally. The company itself retained the premium payment not

only for a period of two months prior to the death of the insured, without notifying the insured or the plaintiffs a medical examination was required, but also retained that money for three months thereafter, knowing no medical examination had been obtained. We think the jury meant by finding number 11 that, under all of the circumstances, the defendant itself must now be regarded as having accepted the premium money unconditionally. Holding these views, we find no reversible error in the order overruling that portion of the motion or in overruling complaint (d).

The judgment must be affirmed. It is so ordered.