**Nalani G. PREMSINGH, M.D., and Chrisman–Sawyer Bank, f/k/a/ First City Bank, Plaintiffs,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**Civil Action No. 95–2275–EEO.**

United States District Court, D. Kansas.

June 4, 1996.

Theodore F. Fay, Kurt S. Brack, Holbrook, Heaven & Fay, P.A., Merriam, KS, for Plaintiffs.

Christopher S. Shank, Melissa C. Hinton, Scott M. Brinkman, John Jenab Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Unum Life Ins. Co. of America.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendant's motion for summary judgment (Doc. # 39). The court has considered the parties' briefs and submissions and is now prepared to rule. For the reasons set forth below, defendant's motion will be granted.

### Factual Background

This case centers around a denial of overhead disability insurance coverage for failure to make timely premium payments. The

following facts are uncontroverted or deemed admitted pursuant to Federal Rule of Civil Procedure 56(c) and District of Kansas Rule 56.1.

In 1989, plaintiff Nalani Premsingh purchased an overhead expense disability policy, Policy # LAD074190 ("the policy"), from UNUM Life Insurance Company Of America ("UNUM"). The policy became effective September 1, 1989, and was non-cancelable to age 65. The policy provides for reimbursement of certain overhead expenses under stated conditions, in exchange for the payment of premiums on each September 1 policy anniversary, or within a 31–day grace period thereafter. The policy also provides for reinstatement in the event of a lapse for failure to make premium payments as follows:

> If this policy terminates because a premium is not paid by the end of the Grace Period, you may apply to reinstate this policy at any time until the first unpaid premium is six months overdue.

> In order to reinstate this policy, two requirements must be met. They are:

> 1. a reinstatement application must be completed (to complete a reinstatement application means you submit the reinstatement application with evidence of the Insured's insurability and the full amount of overdue premium); and

> 2. we approve the reinstatement application.

> A reinstatement application must be prepaid, and we will issue a prepayment agreement. The date of the prepayment agreement will be the date the reinstatement application has been completed.

> If we approve the reinstatement application, this policy will be reinstated on the approval date. If the overdue premium is paid without submitting a reinstatement application and we keep the premium without requesting a reinstatement application within a reasonable time, this policy will be reinstated the date we receive the premium. If we issue a prepayment agreement and do not approve or disapprove the reinstatement application within 45 days from the date of the prepayment agreement,

> this policy will be reinstated on the 45th day.

> If this policy is reinstated, it will only cover:

> 1. injury that occurs on or after the date this policy is reinstated; or

> 2. sickness which is first diagnosed or is first treated more than 10 days after this policy is reinstated.

> It WILL NOT cover:

> 1. any injury or sickness which is excluded by name or description; and

> 2. any preexisting condition excluded by the reinstatement application.

The "General Provisions" of the policy state, "[u]nless we tell you something else, years, months and anniversaries that we refer to are calculated from the Policy Date shown on page 3."

Plaintiff Premsingh failed to pay her premium for the policy period September 1, 1992, through August 31, 1993, by the September 1, 1992, due date, or within 31 days thereafter. A check for the full amount of the annual premium for that policy period, $6,767.67, was received and deposited by UNUM on November 19, 1992. Premsingh's coverage for the September 1, 1992, through August 31, 1993, policy period was reinstated as of the date of the payment, November 19, 1992.

In 1993, Premsingh again failed to pay the premium for the policy period September 1, 1993, through August 31, 1994, by the September 1, 1993, due date, or within 31 days thereafter. Premsingh received notices of unpaid premiums on the policy on or about August 12, 1993, September 10, 1993, and October 12, 1993. On December 10, 1993, Premsingh tendered a check dated October 30, 1993, in payment of the full premium for the 1993–94 policy period.

Rather than automatically reinstating plaintiff's policy as it had done in 1992, UNUM conditioned reinstatement upon receipt of a completed reinstatement application showing evidence of insurability. UNUM forwarded a reinstatement application and prepayment agreement to Premsingh on December 10, 1993, with a cover letter informing her that her premium pay-

ment would be refunded if her completed application was not received by January 3, 1994.

Defendant received plaintiff's reinstatement application and prepayment agreement, dated December 22, 1993, on December 28, 1993. On December 24, 1993, two days after the date on plaintiff's reinstatement application and four days before defendant received the application, plaintiff suffered a stroke.

When UNUM learned that plaintiff had suffered a stroke, it immediately rejected plaintiff's reinstatement application because of her recent medical history, and returned plaintiff's premium. UNUM subsequently denied plaintiff's claim for coverage on the ground that the policy was not in effect on the date when plaintiff suffered the disabling event.

Plaintiff Chrisman–Sawyer Bank, f/k/a/ First City Bank (the "Bank"), claims that it was entitled to notice of overdue premiums as an assignee of the policy. On June 12, 1992, plaintiff executed an Assignment of Disability Income Policy form, which was provided by defendant, and assigned "only [her] rights to receive benefit payments" from the policy to the Bank. The assignment form states, "In all matters pertaining to the rights hereby assigned, you may rely conclusively on the authority granted herein and deal with the assignee of the policy." The policy provides that assignments are permitted if they were in writing, specify the rights to be assigned, and are on a form satisfactory to UNUM. However, the policy specifically provides that UNUM is "not responsible for the validity or effect of any assignment."

*Standards Governing Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dis-

pute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hicks v. City of Watonga*, 942 F.2d 737, 743 (10th Cir.1991). Essentially, the inquiry as to whether an issue is genuine is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. This inquiry necessarily implicates the substantive evidentiary standard of proof that would apply at trial. *Id.* at 252, 106 S.Ct. at 2512.

Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on his pleadings but must set forth specific facts. *Applied Genetics*, 912 F.2d at 1241.

"[W]e must view the record in the light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110 (10th Cir.1991). "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988). The mere existence of some alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2510. Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion. D.Kan. Rule 56.1.

In this diversity case, we ascertain and apply Kansas law with the objective that the result obtained in federal court should be the same result that a Kansas court would reach. *See Adams–Arapahoe School Dist. No. 28–J v. GAF Corp.,* 959 F.2d 868, 870 (10th Cir. 1992).

### Premsingh's Claims

■ Defendant seeks summary judgment on plaintiff Premsingh's breach of contract claim, contending that it did not breach the contract by denying plaintiff's claim for benefits because, as a matter of law, the policy had lapsed and was not in effect on December 24, 1993, when plaintiff became disabled. Plaintiff argues that the premium should have been allocated prospectively only, thus, altering the policy period to November 19, 1992, through November 18, 1993. This would mean that because her premium payment for the 1993–94 policy period would have been within the 30–day grace period of the policy, no reinstatement application was required and coverage for the 1993–94 policy period was in force as of the date of her premium payment on December 10, 1993.

In *Goforth v. Franklin Life Ins. Co.,* 202 Kan. 413, 449 P.2d 477 (1969), the Kansas Supreme Court discussed the principles to be applied in an action on an insurance policy. The language of a contract for insurance "must, if possible, be construed in such manner as to give effect to the intention of the parties." *Id.* at 417, 449 P.2d at 481. If an insurance policy is ambiguous, the policy must be construed in favor of the insured. *Id.* at 417, 449 P.2d at 481. However, where a policy is "clear and unambiguous, the words are taken and understood in their plain, ordinary and popular sense, and there

is no need for judicial interpretation or application of the rules of liberal construction; the court's function is to enforce the contract according to its terms." *Id.* at 417, 449 P.2d at 481. "The rule of strict construction does not relieve a tentative insurance purchaser of the obligation to read the papers which govern the transaction, nor was the rule intended to rewrite insurance contracts when they are fairly expressed and untainted by fraud." *Thomas v. Thomas,* 250 Kan. 235, 240, 824 P.2d 971, 975 (1992).

Defendants argue that under *Blair, Matlack, Rogg, Foote & Scott v. Fidelity Life Association,* 1 Kan.App.2d 382, 567 P.2d 22 (1977), plaintiff's overdue premium for the 1992 policy year was properly allocated retroactively to payment of overdue premiums for September and October of 1992. In *Blair,* the Kansas Court of Appeals considered a policy with the following reinstatement provision:

> A Policy in default may be reinstated at any time within five years after the date of default in payment of premium upon presentation of evidence of insurability satisfactory to the Company, the payment of all premium arrears, and the payment of interest ... on each unpaid premium. ...

*Id.* at 388, 567 P.2d at 27. The court held that the reinstatement clause required allocation of premium payments to periods of lapse, even though no coverage existed during those periods. *Id.* at 389–90, 567 P.2d at 28–29.

The *Blair* court rejected the same argument presented by plaintiff in the instant case, i.e., that retroactive allocation of premiums paid upon reinstatement was unfair because it required the insured to pay for periods in which there was no coverage. The court held that the insurance company did not receive "something for nothing" because the insured derived certain benefits from the ability to reinstate the policy (rather than take out a new policy), including reinstatement at the original age-rated premium amount,[1] continuity of policy reserves, contestability (relating to pre-existing condition),

---

1. We acknowledge that this benefit is limited in the instant case because defendant had the right

under the policy to increase premiums if payment is made beyond the grace period.

and suicide clauses, and avoidance of the operation of any conversion limitation. *Id.* at 28–29, 567 P.2d at 389–90.

Plaintiff's attempt to distinguish *Blair* on its facts is unavailing. *Blair* involved proceeds from mortgage life insurance policies ($65,000 worth of coverage for a $15,000 mortgage) where the insured was murdered by his wife just days after she attempted to reinstate the policy by giving the insurance agent an insufficient funds check. Admittedly, these facts give rise to different equitable considerations than those presented in the instant case. However, this is a distinction without a difference. The Blair court's opinion with respect to the proper allocation of reinstatement premiums is based on universal legal principles of contract interpretation, not equitable principles. Thus, the factual differences in the two cases are of no import.

■ Plaintiff also argues that there is a legally significant distinction between the policy language requiring "payment of all premium arrears" in *Blair* and the policy language requiring payment of "the full amount of overdue premium" in the instant case. Without citation to any authority, plaintiff contends that a requirement of "payment of all premium arrears" clearly implies a requirement of payment of premiums due for a period in the past, while a requirement of payment of "the full amount of the overdue premium" refers to a single premium and "in no way suggests that all 'premiums in arrears' must be paid." Plaintiff argues that the term "overdue premium" simply refers to when the payment was made, but does not indicate how allocation of the premium is to be made. Premsingh also urges that the contract, at best, is ambiguous with respect to how the premiums are to be allocated.

We find no ambiguity in the insurance policy in this case. Rather, we hold that under their plain, ordinary, and popular meanings, the terms "in arrears" and "overdue" are synonymous. One definition of "arrears" is "an unpaid and overdue debt." Webster's Third New International Dictionary 121 (1986). Similarly, "overdue" is defined as "unpaid after the proper or assigned time of payment." *Id.* at 1607. We believe

that the Kansas Supreme Court, if faced with this case, would hold that whether described as "payment in arrears" or as "payment of all overdue premiums," the policy clearly and unambiguously requires payment of all premiums due for past periods of lapsed coverage as a precondition to reinstatement. Thus, defendant properly allocated the 1992 premium payment to the policy period of September 1992 through August 1993. Having reached this conclusion, it follows under the terms of the policy that defendant was within its rights to require that plaintiff complete the reinstatement underwriting process before reinstating the original policy.

■ In a related argument, plaintiff maintains that defendant is estopped to deny coverage because by accepting her premium, defendant bore the risk of loss during the reinstatement underwriting period. In *Waldner v. Metropolitan Life Insurance Company,* 149 Kan. 287, 87 P.2d 515 (1939), the court held that by retaining a premium payment for an unreasonable time after application for reinstatement of a life insurance policy, the insurance company waived the requirement of proof of insurability. The court quoted *Andrus v. Fidelity Mutual Life Insurance Association,* 168 Mo. 151, 166, 67 S.W. 582 (1902):

> The company must take one horn of the dilemma or the other. It cannot retain the benefits and deny the existence of the contract. If it does not wish the receipt of the premium to have the effect in law of reinstating the policy or of preventing a forfeiture, it must refuse to receive the money until the health certificate is filed and until the president and medical director act.

Based primarily on *Waldner,* plaintiff argues that because defendant retained the premium payment she submitted on December 10, 1993, defendant accepted the risk of loss at the time. She contends that, at a minimum, it is a jury question as to whether defendant acted within a reasonable time in denying reinstatement to plaintiff.

We do not agree. The starting point for our analysis is *Thomas,* 250 Kan. 235, 244, 824 P.2d 971, 977, a case in which the Kansas Supreme Court overruled twenty years of

precedent, which began with *Tripp v. Reliable Life Insurance Company*, 210 Kan. 33, 499 P.2d 1155 (1972). In *Tripp*, the court held that, regardless of express terms in an insurance application and conditional receipt of a premium, the acceptance of a premium and the giving of a conditional receipt creates a temporary contract for insurance which binds the insurance company until they notify the applicant that coverage is denied. Thus, under *Tripp*, insurance companies bore the risk of loss even beyond a stated underwriting period.

However, in *Thomas*, 250 Kan. 235, 244, 824 P.2d 971, 977, the court held that express terms in an application and conditional receipt, which limit the term of temporary insurance to a specified period, are to be honored. The effect of *Thomas* was to limit the insurance companies' risk of loss to the period for which they accepted a premium payment. Under *Thomas*, temporary insurance expires as stated in the application and conditional receipt, unless the insurance company acts to terminate the temporary coverage earlier. 250 Kan. at 243–44, 824 P.2d at 976–77. The essential difference between *Tripp* and *Thomas* is that *Thomas* mandates that specific terms in a policy regarding risk of loss be enforced, if they are clear and unambiguous.

Thus, we must examine the policy at issue regarding procedures to be followed for reinstatement. Under the policy provisions, reinstatement requires: (1) a reinstatement application, (2) evidence of insurability, (3) prepayment of the overdue premium, and (4) approval of the reinstatement application. If UNUM approves reinstatement, the policy requires that the policy be reinstated as of the approval date. If, however, an overdue premium is paid without submitting a reinstatement application and UNUM issues a prepayment agreement (as occurred here), the policy requires UNUM to approve or disapprove the reinstatement application within 45 days from the date of the prepayment agreement. If UNUM fails to act, the policy is automatically reinstated on the 45th day. We note that the policy also provides for reinstatement as of the date UNUM received the premium, but only if a premium

was paid without an accompanying reinstatement application and UNUM kept the premium without requesting a reinstatement application within a reasonable time. However, that scenario did not occur here. Finally, the policy states that if reinstatement is granted, coverage for any sickness which is diagnosed or treated within ten days of reinstatement is specifically excluded.

It is uncontroverted that Premsingh did not make the premium payment for the 1993–94 policy period until December 10, 1993. UNUM received the premium on that date, kept the premium payment, conditioned reinstatement on receipt of a completed reinstatement application showing evidence of insurability, and forwarded a reinstatement application and prepayment agreement to Premsingh. Premsingh states that she returned the application and prepayment agreement to defendant's local agent on December 16, 1993. However, plaintiff's reinstatement application and prepayment agreement were dated December 22, 1993, were mailed on December 23, 1993, and were received by defendant on December 28, 1993. Plaintiff's stroke occurred on December 24, 1993. On January 13, 1993, after learning that plaintiff had suffered a stroke, UNUM rejected plaintiff's reinstatement application because of her recent medical history, and returned her entire premium.

Given the policy provisions, we believe that the Kansas Supreme Court would hold, as a matter of law, that under the uncontroverted facts of the instant case, the stroke causing plaintiff's alleged disability occurred outside a covered period. We recognize that the Kansas Supreme Court in *Thomas* distinguished *Waldner* as a case which involved reinstatement of an existing policy, rather than an application for new insurance coverage. *Thomas*, 250 Kan. at 241, 824 P.2d at 975. However, we disagree with plaintiff that this takes a reinstatement application outside the ruling of *Thomas*. Rather, we believe that our decision is in accord with both *Waldner* and *Thomas*.

The policy lapsed upon Premsingh's failure to pay the premium by October 2, 1993. To have the policy reinstated, Premsingh was required to comply with the reinstatement

procedures as set forth in the policy. *Thomas,* 250 Kan. at 244, 824 P.2d at 977 (clear and unambiguous terms in an insurance contract should be enforced). This included providing proof of insurability, as requested by UNUM, and a reinstatement application. Moreover, under the terms of the policy, UNUM did not bear the risk of any illness, injury, or event occurring prior to 10 days after reinstatement and had 45 days to make a determination on whether to reinstate Premsingh's policy.

██ An insurance company, upon receipt of a reinstatement application accompanied by payment of the premium, has a reasonable time in which to act. *Waldner,* 149 Kan. at 290, 87 P.2d at 519. Although the question of reasonableness ordinarily presents a question of fact for the jury, it may be resolved by the court, as a question of law, where no facts essential to the determination are in dispute. *Id.* This is the situation presented by the instant case. Accordingly, we hold that, as a matter of law, the 45–day underwriting period expressly set forth in the policy was a reasonable time in which to require UNUM to act upon plaintiff's reinstatement application.

It is uncontroverted that, at the time of the disabling event, UNUM had not yet received plaintiff's application, much less completed the underwriting process, and that UNUM acted well within the 45–day period. Thus, as a matter of law, defendant was within its rights under the express policy provisions and *Waldner* to reject Premsingh's reinstatement application, return the premium, and deny coverage. Defendant is, therefore, entitled to summary judgment on Premsingh's claims.

### *The Bank's Estoppel Claim Related to Lack of Overdue Premium Notice*

██ Plaintiff Bank claims that the defendant is estopped from denying the Bank recovery of benefits under the policy because it failed to notify the Bank, as assignee of the right to receive benefits from the policy, that Premsingh's premiums were overdue. Plaintiff Bank suggests that by accepting and recording Premsingh's assignment of her right to collect benefits, defendant contractually agreed to provide the Bank with notice of overdue premiums. The Bank argues that because the right to collect benefits is the essence of the insurance contract, Premsingh's assignment of that right was broad, rather than limited, in nature and, as such, gave rise to a duty to notify the assignee of overdue premiums.

Defendant seeks summary judgment because it argues that, given the limited assignment of only Premsingh's right to receive benefits, it had no duty to provide the Bank with notice of overdue premiums. We agree.

██ The general rule governing the duty of an insurance company to send premium or lapse notices to an assignee of an insurance policy is as follows:

> In the absence of any statute or contract of the insurer to the contrary or conduct of the insurer giving rise to a duty to notify the assignee, there is no duty on the insurer to notify an assignee of the policy of premiums or assessments due thereon.

*Sorenson v. National Life Ins. Co.,* 56 Wis.2d 92, 201 N.W.2d 510 (1972) (quoting 5 Couch, Insurance 2d (Rev.Ed.), § 30.143, at 734 (1984), and holding, under a broader assignment than in the instant case, that the assignee had no right to notice); *see also Bank of Poplar Bluff v. Metropolitan Life Ins. Co.,* 723 S.W.2d 514, 521–23 (Mo.Ct.App.1986) (citing *Sorenson* ); *Lewis State Bank v. Travelers Ins. Co.,* 356 So.2d 1344, 1347 (Fla. 1978) (duty to notify must arise from express terms in the policy, express assurances by insurance company, or conduct of the parties).

The facts in *Sorenson* are similar to the instant case in that the assignor was primarily responsible for premium payments, prior premium notices were sent only to the assignor, and the Bank did not expressly request or receive assurance that it would receive premium or cancellation notices. *Sorenson,* 201 N.W.2d at 513. The court held that despite the insurance company's acceptance and recordation of an assignment of an insurance policy, there was no conduct by the insurance company giving rise to a duty to notify. *Id.* The same may be said in this case.

Although we are not aware of any Kansas case directly on point,[2] we believe the Kansas Supreme Court would follow the numerous other states which hold that absent a statute, contract, or actions by the insurer giving rise to a duty to notify the assignee, an insurer does not have such a duty. Thus, defendant is entitled to judgment as a matter of law on the Bank's claim for benefits.

IT IS THEREFORE ORDERED that defendants' motion for summary judgment (Doc. # 39) is granted.

---

**2.** In *Vargas v. Nautilus Ins. Co.*, 248 Kan. 881, 887, 811 P.2d 868, 873 (1991), the court held that being listed as a loss payee (instead of a mortgagee) is not sufficient to require notice of cancellation because being named as a loss payee merely indicates a right to receive the proceeds from a policy, but does not create a contract between the named loss payee and the insurer. "The named payee must stand in the shoes of the insured and has rights independent of the insured's right." *Id.*